THE CARLSON CORPORATION *vs.* UNIVERSITY OF VERMONT.

Suffolk.  November 7, 1979. — March 6, 1980.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Jurisdiction,* Nonresident, Long-arm statute.

Where a multimillion dollar contract between a Vermont university
and a Massachusetts corporation was signed in Massachusetts after
months of negotiations, the courts of Massachusetts were entitled to ex-
ercise personal jurisdiction over the university pursuant to G. L.
c. 223A, the long-arm statute, in connection with an action for breach
of the contract.  [105-109]

CIVIL ACTION commenced in the Superior Court on
February 1, 1978.

A motion to dismiss was heard by *Ford,* J., and the case
was reported by him to the Appeals Court.  The Supreme
Judicial Court granted a request for direct review.

*William G. Meserve* for the defendant.
*James J. Barrett* for the plaintiff.

ABRAMS, J.  In this action for breach of contract we are
asked to determine whether a Massachusetts corporation may
sue the University of Vermont (university) in a Massachusetts
court.  In February, 1978, The Carlson Corporation (Carl-
son) sued the university in the Superior Court in Suffolk
County for the balance due under the contract.  The univer-
sity was served by certified mail pursuant to the Massachu-
setts long-arm statute, G. L. c. 223A, § 6, and moved to
dismiss pursuant to Mass. R. Civ. P. 12 (b) (2), 365 Mass. 754
(1974), for lack of personal jurisdiction.  The motion was
denied. Pursuant to the university's request, the judge of the
Superior Court agreed to report his interlocutory order to the
Appeals Court for review under the provisions of G. L.
c. 231, § 111, and Mass. R. Civ. P. 64, 365 Mass. 831 (1974).
We granted the university's request for direct appellate
review. We affirm.

The university's basic contention is that it had insufficient contacts with Massachusetts to be "transacting any business in this commonwealth" within the meaning of the long-arm statute,[1] and within the constitutional limits on the exercise of personal jurisdiction by a State over a nonresident. The parties have agreed that the jurisdictional question is to be decided solely on the basis of the facts set forth in the affidavits.[2] We summarize the affidavits.

The plaintiff is a Massachusetts corporation with its principal and usual place of business in Cochituate, Massachusetts. The defendant is a Vermont corporation created by a special act of the Vermont Legislature,[3] which has its main campus and principal place of business in Burlington, Vermont. Although it owns property and offers courses elsewhere in Vermont, the university has no campuses, owns no real estate and has no offices or other places of business in Massachusetts.

---

[1] In pertinent part, G. L. c. 223A, § 3, as amended through St. 1976, c. 435, reads as follows: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (*a*) transacting any business in this commonwealth . . . ." There is no serious contention that any other provision of the statute applies.

[2] The record in this case is extremely poor because the facts established by the affidavits provide only the bare minimum of information necessary to decide the issue. No facts are available as to the source of financing, whether any of the contract was to be performed in Massachusetts, whether Massachusetts residents were employed in any number, or the details of the alleged breach of contract. On the basis of the record before us, the decision in this case represents the outer limits of a constitutionally permissible exercise of jurisdiction. General Laws c. 223A, § 3, however, is "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *"Automatic" Sprinkler Corp.* v. *Seneca Foods Corp.*, 361 Mass. 441, 443 (1972).

[3] *Nevada* v. *Hall,* 440 U.S. 410 (1979), held that although a State is not constitutionally immune from suit in the courts of another State, States might accord each other immunity, or respect any established limits on liability, as a matter of policy. There is no information in the record as to whether the university could properly be considered part of the State government. As this issue was not raised below and is not raised or argued by the parties in this appeal, we leave open the policy question whether we should create an exception to our rule of asserting jurisdiction to the fullest possible extent where the nonresident defendant is another State.

In the early 1970's, the university planned to build a Living and Learning Center in Burlington, Vermont. At no time did the university publish any advertisements or invitations to bid in any Massachusetts newspaper or publication. Rather, early in 1971, Carlson initiated negotiations seeking the contract award. These negotiations consisted of two phone calls from Carlson to a university official, with followup letters to which the university replied. In June, 1971, Carlson hand-delivered the required prequalification documents to the same university official in Burlington, Vermont, and in September, 1971, Carlson submitted a final design/build proposal.

A special review panel in Burlington, created especially to choose a proposal, selected the Carlson proposal. The contract between the university and Carlson for the design and construction of the Living and Learning Center was executed on January 5, 1972, in Boston, Massachusetts. The university official stated that the construction contract and related financing papers were signed in Boston "to accommodate officials of the U.S. Department of Housing and Urban Development and the Office of Education of the Department of Health, Education and Welfare, who were providing interest and subsidies in connection with the financing of this Project . . . ."

Construction of the project took place in Burlington, Vermont, and formal and informal job meetings were held virtually every day at the site. The building construction supervisor stated that he never dealt with Carlson representatives in Massachusetts.[4] Carlson mailed invoices for the

---

[4] He did, however, say that university officials may possibly have met with Carlson representatives in Massachusetts on one other occasion prior to construction when certain persons affiliated with the university may have been invited to tour the Carlson offices in Cochituate, Massachusetts, and review some specifications. While allegations of fact in an uncontroverted affidavit must be accepted as true for the purposes of a rule 12 motion, *Farley* v. *Sprague*, 374 Mass. 419 (1978), the plaintiff, however, bears "the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 3 (1979). Even if we accept the allegation as true, its

work performed on the project to the university at Burlington; all payments under the contract were made by check mailed to Carlson from Burlington, Vermont.

In testing a claim of personal jurisdiction over a nonresident defendant, we must first determine whether the defendant's conduct comes within the literal terms of G. L. c. 223A. Only then do we consider whether the exercise of jurisdiction in the particular case would be consistent with basic requirements of due process mandated by the United States Constitution. *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). There can be no doubt that physically signing a contract in Massachusetts is, in literal terms, transacting business in Massachusetts, if the cause of action arises from that contract. The more difficult inquiry in this case is determining "whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." *Id.* at 7. The determination whether personal jurisdiction can properly be asserted by the courts of the forum State is "one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko* v. *Superior Court*, 436 U.S. 84, 92 (1978), citing *Estin* v. *Estin*, 334 U.S. 541, 545 (1948). Each case must turn on its own facts. *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 156-157 (1978).

In the instant case, the contract signing ceremony, which took place in Massachusetts, was the culmination of months of negotiations. The ceremony was an essential and critical stage of the business relation between the parties. Whatever the university's reasons for scheduling the contract signing ceremony in Boston, the defendant's physical presence in Massachusetts to execute the contract was a deliber-

conjectural nature precludes the plaintiff from relying on this allegation as an additional "contact" between the university and Massachusetts. Presumably this is a fact the plaintiff could easily have documented; it is not clear why it has not done so.

ate action and is properly characterized as "an affirmative, intentional act of the defendant." See *Good Hope Indus., Inc.* v. *Ryder Scott Co., supra* at 7; *Vencedor Mfg. Co.* v. *Gougler Indus., Inc.*, 557 F.2d 886, 892 (1st Cir. 1977). Cf. *Kaye-Martin* v. *Brooks*, 267 F.2d 394 (7th Cir. 1959); Restatement (Second) of Conflict of Laws § 36, at 150-151 (1971). "[W]here a contract is made in this State and a cause of action arises out of such contract, the consummation of the contract in [the forum State] constitutes the transaction of business or the minimum contacts necessary to invoke personal jurisdiction." *Iroquois Gas Corp.* v. *Collins*, 42 Misc. 2d 632, 634-635 (N.Y. Sup. Ct. 1964). Accord, *Patrick Ellam, Inc.* v. *Nieves*, 41 Misc. 2d 186 (N.Y. Sup. Ct. 1963).[5] See *O'Brien* v. *Lanpar Co.*, 399 S.W.2d 340 (Tex. 1966); *Kropp Forge Co.* v. *Jawitz*, 37 Ill. App. 2d 475 (1962) (but see *Baughman Mfg. Co.* v. *Hein Equip. Co.*, 44 Ill. App. 2d 373 [1963]); Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U. Ill. L.F. 533, 563-566.[6]

In *McGee* v. *International Life Ins. Co.*, 355 U.S. 220 (1957), the Supreme Court upheld California's assertion of personal jurisdiction over a nonresident defendant based on a single contract "which had substantial connection with that State." *Id.* at 223.[7] Similarly, the contract in this case

---

[5] *Aurea Jewelry Creations, Inc.* v. *Lissona*, 344 F. Supp. 179, 181 (S.D.N.Y. 1972), suggests that physical presence in New York during execution is but one factor to be considered. However, the cases cited for that proposition involve the situation where a contract is mailed into New York and considered the last step in "making" the contract. See, e.g., *Agrashell* v. *Bernard Sirotta Co.*, 344 F.2d 583 (2d Cir. 1965). See also Note, Developments in the Law — State-Court Jurisdiction, 73 Harv. L. Rev. 909, 926-928 (1960).

[6] The case of *Salter* v. *Lawn*, 294 F. Supp. 882 (D. Mass. 1968), relied on by the plaintiff, concerns the liability of a nonresident defendant on a note made in Massachusetts by a Massachusetts primary obligor. *Salter* is inapposite because the nonresident defendant in that case was a principal in one of the businesses involved, and thus had far more substantial connections with Massachusetts than the defendant in this case.

[7] In *McGee*, the nonresident defendant solicited a reinsurance agreement with a resident of California. The offer was accepted in that State,

also has a substantial connection with this State, based on the amount of time and money involved.[8] See *Manufacturers Lease Plans, Inc.* v. *Alverson Draughon College,* 115 Ariz. 358, 364 (1977).

Where the nonresident defendant's contacts with Massachusetts had substantial commercial consequence in this State, personal jurisdiction was found, notwithstanding the absence of actual physical presence in Massachusetts. *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. 1, 9-10 (1979).[9] Cf. *Droukas* v. *Divers Training Academy, Inc.,* 375 Mass. 149, 154 (1978); *"Automatic" Sprinkler Corp.* v. *Seneca Foods Corp.,* 361 Mass. 441, 446 (1972). See *Nichols Assocs.* v. *Starr,* 4 Mass. App. Ct. 93 (1976).

We emphasize, however, that the amount of money in dispute on a contractual claim is not the sole factor in deter-

and the insurance premiums were mailed from there until the insured's death. We noted in *"Automatic" Sprinkler Corp.* v. *Seneca Foods Corp.,* 361 Mass. 441, 446 (1972), that "the insurance field lend[s] itself to the furthest extension of jurisdiction based on an isolated contact."

[8] As to time, while the record does not show precisely how long the contract took to perform, the contract called for completion of construction by August 1, 1973. Assuming performance was timely, the parties had an ongoing contractual relation for one and one-half years; if gauged from the time negotiations commenced in early 1971, the period involved was at least two and one-half years.

As to money, the construction contract price was $5,786,977.94 and the design/consultant contract price was $58,695.65. Compare *Mark* v. *Obear & Sons,* 313 F. Supp. 373, 376 (D. Mass. 1970) ($5,000 worth of sales in Massachusetts is "substantial revenue" within the meaning of G. L. c. 223A, § 3 (d), which allows long-arm jurisdiction where the defendant causes tortious injury in the State by an act or omission outside the State if he derives "substantial revenue" from goods used or consumed, or services rendered, in this Commonwealth). With the exception of the amount in dispute, the university regularly mailed its contract payments into this State.

[9] In *Ross* v. *Ross,* 371 Mass. 439, 442 (1976), we noted, citing authority elsewhere, that "[t]he mere execution of a separation agreement in a State has been held sufficient under a long-arm statute to justify an assertion of jurisdiction . . . in connection with a suit to enforce the separation agreement." We agree with the defendant that separation agreements are different from commercial contracts since the State has a greater interest in separation agreements which further "fundamental substantive social policies." *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U.S. 286, 292 (1980), citing *Kulko* v. *Superior Court,* 436 U.S. 84, 93, 98 (1978).

mining a nonresident defendant's amenability to suit in the courts of the Commonwealth under G. L. c. 223A, § 3. Compare *McGee* v. *International Life Ins. Co., supra* (individual consumer). See also Currie, The Growth of the Long Arm, *supra* at 549. Here, the nature of the contract must be viewed in conjunction with other aspects of the dealings between the parties, most notably, the defendant's physical presence in this State at a formal contract signing, attended by a number of persons other than the immediate parties.

The interests of the forum State are a relevant factor in determining questions of jurisdiction. *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 292 (1980). In this case, the university engaged in a commercial transaction over a prolonged period of time with a Massachusetts corporation pursuant to a written contract signed in this State. In these circumstances, Massachusetts has an interest not only in providing a forum for its residents, but also in enforcing business transactions consummated within its boundaries. See *Product Promotions, Inc.* v. *Cousteau*, 495 F.2d 483, 498 n.27 (5th Cir. 1974); *Southern Mach. Co.* v. *Mohasco Indus., Inc.*, 401 F.2d 374, 385 (6th Cir. 1968); *Aftanase* v. *Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965); Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U. Ill. L.F., 533, 565. We think "[f]ailure to honor a contractual obligation incurred in a state cannot reasonably be said to be without consequences there. The effects of such a breach of contract on the general conduct of business may not be readily quantifiable, but they are, nonetheless, real." *Davis H. Elliot Co.* v. *Caribbean Utils. Co.*, 513 F.2d 1176, 1181-1182 (6th Cir. 1975).

The final question is whether the burden imposed on the university by requiring it to defend this action in Massachusetts amounts to a constitutional infirmity. The factors traditionally associated with the doctrine of forum non conveniens are relevant, albeit not controlling, on jurisdictional questions. *Whittaker Corp.* v. *United Aircraft Corp.*, 482

F.2d 1079 (1st Cir. 1973); *Aftanase* v. *Economy Baler Co.,* *supra;* 2 Moore's Federal Practice par. 4.25 [5], at 4-262 to 4-264 (2d ed. 1979). However, the record lacks sufficient facts bearing on the issue whether the defendant would be unduly burdened by being required to defend this suit in Massachusetts.[10]

The university deliberately chose to do business with a Massachusetts resident,[11] presumably because it was to its advantage. Since it was within the university's power to refuse to "transact any business" in this Commonwealth, we do not think it unfair or unreasonable in a constitutional sense to compel the university to defend this action in Massachusetts. On the record before us we conclude that there is a sufficient nexus among the defendant, the forum, and the litigation. Thus, we affirm the interlocutory order of the Superior Court. The case is remanded to the Superior Court for further proceedings.

*So ordered.*

---

[10] The defendant did not raise the issue of forum non conveniens below. See G. L. c. 223A, § 5. Consideration of a motion based on forum non conveniens involves a decision to decline jurisdiction which is constitutionally permissible when another State is better situated to deal with the matter. See *Doe* v. *Roe,* 377 Mass. 616, 618-619 (1979); *New Amsterdam Cas. Co.* v. *Estes,* 353 Mass. 90, 97-98 (1967). Action on such a motion may well be dispositive of the question whether the plaintiff's case should be heard in Massachusetts.

We add that it seems inappropriate for parties to request a report on the issue of long-arm jurisdiction before resolving the issue of forum non conveniens. We disapprove of piecemeal appeals, and the defendant's request for a report should not have been granted unless it were ascertained that the defendant would not file a motion based on forum non conveniens, or if such a motion were filed, until the judge granted or denied the motion.

[11] The fact that the resident plaintiff may have initiated the entire business relationship is not a fact which is entitled to constitutional consideration. *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. 1, 11 (1979).