**SPACE BUILDING CORP.**
v.
**ENVIRODYNE ENGINEERS,**
**INC., ET AL**

**Civ. A. No. 80-544-C**

United States District Court
D. Massachusetts

**March 10, 1981.**

</div>

John C. Martland for the plaintiff.
Joseph H. Walsh for the defendant.

## MEMORANDUM

CAFFREY, CH. J. In this civil action Space Building Corporation (Space), a Massachusetts construction company, seeks to recover from Envirodyne Engineers, Inc. (Envirodyne) and its subsidiary Agrostruct International, Inc. (Agrostruct) for the alleged breach of a contract between Space and Agrostruct.

Agrostruct is incorporated under the laws of the State of Washington and has its principal place of business in Chicago. Envirodyne is a Delaware corporation and has its principal place of business in Chicago. Jurisdiction is based on 28 U.S.C. § 1332.

The following allegations are taken as factual for purposes of the instant motions: On December 1, 1976 Space contracted with Agrostruct to erect a prefabricated bakery building in Tehran, Iran. In addenda executed on January 10, 1977 and July 26, 1977 it agreed to perform further services relating to the construction.

The case is before the Court on Agrostruct's motion to dismiss for lack of personal jurisdiction, and Envirodyne's motion for summary judgment. Plaintiff claims that it performed all of its contractual obligations and is owed an additional $134,224.93 for services performed under the second addendum to the contract. Space further contends that Envirodyne adopted and agreed to assume the contractual obligations of Agrostruct.

The following facts have been alleged in the amended complaint, or are recited in affidavits and exhibits relating to the defendants' motions. On December 1, 1976 representatives of Agrostruct went to the Massachusetts offices of Space and executed a written contract for the erection of a bakery building in Iran. Under the provisions of the contract, Agrostruct provided specifications, all materials and equipment, and approved personnel assignments made by Space. Space selected the employees, provided all hand tools, and obtained insurance from Massachusetts companies. Plaintiff also executed a performance bond in Massachusetts, which required the general manager and his wife, Massachusetts residents, to execute a joint venture agreement with Space.

On January 10, 1977, the parties executed Addendum Number One, by which Agrostruct exercised its options to have plaintiff perform mechanical and electrical installations in the bakery. With the knowledge of Agrostruct, Space subcontracted portions of these projects to other Massachusetts companies. In May 1977 Agrostruct requested Space to perform additional construction services under Addendum Number Two. The parties executed that addendum on July 26, 1977, after obtaining the necessary extensions in the insurance coverage. By letter dated August 3, 1977 written on Envirodyne stationery,

Ben Sosewitz, the president of Envirodyne, confirmed his telephone assurances that he would reimburse Space on a bi-weekly basis for its work under the addendum. Space submitted bi-weekly requisitions for payment, and received payments totalling $66,983.88, including six checks totalling $50,983.88 drawn on the Environdyne account in a Chicago bank. Having allegedly completed its obligations, plaintiff now says it is owed an additional $134,224.93 as the balance due under the contract.

Plaintiff bears the burden of alleging and establishing facts sufficient to establish the jurisdiction of this Court over Agrostruct.

The inquiry for this Court is two-fold: statutory and constitutional. The Massachusetts Long-Arm Statute, Mass. Gen. Laws c. 223A, § 3(a), gives rise to jurisdiction if the defendant either directly or through an agent transacted business in the Commonwealth, and if the alleged cause of action arose from such transaction of business. Whether § 3(a) is satisfied depends on the extent of participation in Massachusetts commerce. "Automatic" Sprinkler Corp. of America v. Seneca, 361 Mass. 441 (1972). According to the affidavit of Robert DiCroce, president of Space, Agrostruct maintained contact over a two-year period with Space by telephone, telex and mail, executed the two addenda, provided specifications, and exercised continuing oversight over the performance of the contract. The physical presence of Agrostruct's agents in Massachusetts to execute the contract was sufficient to satisfy the literal requirements of § 3(a). Carlson Corp. v. University of Vermont, 1980 Mass. Adv. Sh. 659, 402 N.E.2d 483. Moreover since the execution of the December 1, 1976 contract was not an isolated transaction in the state, the defendant's presence in the state cannot be said to have been "attenuated or fortuitous", Bachman v. Schiff, 84 F.R.D. 132, 135 (D.Mass. 1979).

Plaintiff also must satisfy the constitutional inquiry whether "there was some minimal contact with the Commonwealth which resulted from an affirmative intentional act of the defendant such that it is fair and reasonable to require the defendant to come into the state to defend the action," Good Hope Industries, Inc. v. Ryder Scott Co., 1979 Mass. Adv. Sh. 1155, 1163, 389 N.E. 2d 76 (1979). The number, nature and purpose of Agrostruct's contacts, and their nexus with this cause of action, militate in favor of a ruling that this Court has jurisdiction. In addition, the constitutional inquiry includes considerations of fairness and convenience to the parties, and the interest of the forum state. See, Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1083 (1st Cir. 1973). Here performance of the contract implicated the services of local subcontractors and insurance companies, the involvement of numerous Massachusetts employees, and a commitment in excess of $300,000 by Space, which has its principal place of business in this state. Such significant commercial consequences invoke the interest of the state in providing a forum for this litigation. See, World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 292 (1980); Droukas v. Divers Training Academy, Inc., 1978 Mass. Adv. Sh. 1175, 376 N.E. 2d 548 (1978).

Since Agrostruct knowingly made use of business opportunities of substantial dimensions in Massachusetts, the need to defend itself in the state "was reasonably forseeable, if not forseen, rather than a surprise." Good Hope Industries, supra at 1168. The defendant "purposely avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Given these facts, the possible inconvenience of defending itself in Massachusetts cannot be said to reach constitutional dimensions. Accordingly, I rule that the constitutional and statutory requirements are met for the exercise of in personam jurisdiction over Agrostruct by this Court.

Since the Court has in personam jurisdiction under the long arm statute, service of process may be made outside of Massachusetts. Mass. Gen. Laws c. 223A, § 4. Space served process on Agrostruct by certified mail, return receipt requested, sent

to both the president and the secretary/treasurer of the company, in accordance with c. 223A, § 6. Since service of process was sufficient, I rule that defendant Agrostruct's motion to dismiss is without merit.

The co-defendant, Envirodyne, seeks summary judgment, arguing that there is no liability against it since it was not a party to the contract between Space and Agrostruct. In support of its motion, Envirodyne submitted the affidavit of Ben Sosewitz, its president. He states that Envirodyne has never done business with Space. The file includes copies of the letter sent by Sosewitz to Space and the Envirodyne checks paid to Space. Envirodyne has submitted no affidavits in support of the statement in its brief that Sosewitz wrote the letter in his capacity as president of Agrostruct rather than as president of Envirodyne. Nor has it supported any proof of its claim that the letter was on Envirodyne stationery through clerical error. It has submitted no support for its contentions that the payments to plaintiff were merely an "accommodation" and that Agrostruct repaid Envirodyne through intercompany billing procedures.

I rule that genuine issues of fact exist as to whether Envirodyne's dealings established an enforceable agreement to pay Space, and as to whether it may be liable under a theory of equitable estoppel. See, **National Egg Co. v. Schneider Egg, Co., Inc.,** 519 F.2d 1145 (5th Cir. 1975). Although construction of a written agreement is a matter of law for the Court, **Ceco Corp. v. Bennett,** 355 Mass. 791 (1969), whether an agreement existed is an appropriate issue of fact for trial. **Soar v. National Football Player's Association,** 550 F.2d 1287 (1st Cir. 1977). The issue of equitable estoppel, which depends upon questions of intent, knowledge and the credibility of witnesses, also is best resolved by the trier of fact rather by summary judgment. See, **Morrison v. Nesson Co., Ltd.,** 601 F.2d 139 (4th Cir. 1979).

Viewing the record in the light most favorable to plaintiff and indulging all inferences in its behalf, **Hahn v. Sargeant,** 523 F.2d 461 (1st Cir. 1975), **cert. denied,** 425 U.S. 904 (1976), I rule that genuine issues of material fact exist which preclude the entry of summary judgment for Envirodyne.

Order accordingly.

**Andrew A. Caffrey**
**Chief Justice**