**BEAVER BUILDERS, Plaintiff,**

v.

**SCHNIP BUILDING, et al., Defendants.**

**Civ. A. No. 85–0881–Y.**

United States District Court,
D. Massachusetts.

Dec. 5, 1985.

Lawrence M. Slater, Peter A. Johnson, Lane & Altman, Boston, Mass., for plaintiff.

Robert J. Sherer, Roche, Carens & De-Giacomo, Boston, Mass., for Schnip.

Barbara Levine, Sullivan & Worcester, Boston, Mass., for Charles Burd.

William A. Horne, Goulston & Storrs, Boston, Mass., for State Properties of New England, Inc.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This case arises out of the alleged breach of two construction contracts. Jurisdiction exists under 28 U.S.C. § 1332. The plaintiff, Beaver Builders ("Beaver"), alleges that the defendant Schnip Building company ("Schnip Corp.") failed adequately to perform two contracts covering construction work in Connecticut. The defendants John Schnip and Charles Burd are sued as guarantors of one of the contracts. Schnip and Burd each have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), alleging that they are not amenable to suit in Massachusetts. For the reasons discussed below the motions are denied.

### I.

At all times relevant to this matter Schnip and Burd were chairman of the board and president, respectively, of Schnip Corp., a Connecticut corporation with its principal place of business at Norwichtown, Connecticut. In addition, Schnip owned stock in the corporation. Both Burd and

Schnip were, and continue to be, residents of Old Lyme, Connecticut. Beaver is a Massachusetts corporation with its principal place of busines in Newton Centre, Massachusetts.

Sometime prior to June, 1983 Schnip Corp., through Burd and Schnip, entered into negotiations with Beaver concerning certain construction work to be performed at the Crystal Mall site in Waterford, Connecticut. Both Burd and Schnip actively pursued these negotiations, and it is undisputed that each of them came to Beaver's Massachusetts office at least once to negotiate the terms of the construction contracts. Evidently, a major objective of Beaver in these negotiations was to secure personal guarantees from Schnip and Burd for any contracts that might be awarded. The parties' affidavits are in disagreement as to where the negotiations were taking place when the subject of personal guarantees arose. Burd and Schnip swear that the guarantees were negotiated entirely in Connecticut. Thomas McCaffary, Beaver's vice president, and Frank Barnhill, Beaver's project manager, swear that the guarantees were negotiated, at least in part, in Massachusetts.

Ultimately the parties' negotiations resulted in Beaver awarding two contracts to Schnip Corp. The first, referred to in the complaint as the "Mall Agreement," was signed in Connecticut by Burd, for Schnip Corp., on June 21, 1983. On June 22, 1983 Burd and Schnip each executed, in Connecticut, a personal guarantee of Schnip Corp.'s performance under the Mall Agreement. All the work required under the Mall Agreement was to be performed in Connecticut. On October 28, 1983 Burd signed the second agreement for Schnip Corp., referred to in the complaint as the "Penny Agreement." This too he signed in Connecticut. No personal guarantees were given in connection with the Penny Agreement. All the work required under the Penny Agreement also was to be performed in Connecticut.

## II.

A federal court sitting in diversity must apply the law of the forum state to determine the amenability to suit of a nonresident. *Hahn v. Vermont Law School,* 698 F.2d 48, 49 (1st Cir.1983). Under Massachusetts law a court may exercise personal jurisdiction over a nonresident defendant only if the following two questions can be answered in the affirmative:

> (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution.

*Good Hope Industries v. Ryder Scott Co.,* 378 Mass. 1, 5–6, 389 N.E.2d 76 (1979).

The Massachusetts Long Arm Statute authorizes jurisdiction over a nonresident defendant as to a cause of action that arises out of that person's "transacting any business" in the commonwealth. Mass. Gen.Laws ch. 223A, § 3(a). Burd and Schnip argue that the cause of action on the guarantee arises out of transactions wholly separate and distinct from any business they transacted in Massachusetts concerning the construction contracts. Thus, they argue, since the guarantees were negotiated in Connecticut, signed in Connecticut, and related to work to be performed in Connecticut, chapter 223A does not authorize jurisdiction in this case. The argument fails for two reasons.

To begin, the Court is not persuaded that the guarantees were negotiated entirely outside of Massachusetts. As noted above, the affidavits submitted by the parties contradict each other on this point. The Court finds that given the importance of the guarantees to Beaver, it strains common sense to believe that Burd and Schnip meticulously avoided discussing the guarantees whenever they negotiated the other provisions of the construction contracts in Massachusetts. The Court finds credible the affidavits of Barnhill and McCaffery which state that the personal guarantees were negotiated in Massachusetts. Jurisdiction is authorized under the Massachu-

setts Long Arm Statute where a nonresident defendant is physically present to either negotiate or execute a contract. *Carlson Corp. v. University of Vermont,* 380 Mass. 102, 402 N.E.2d 483 (1980); *First National Bank of Boston v. Bergreen,* 11 Mass.App. 956, 417 N.E.2d 50 (1981).

■ But even if the Court was not persuaded that the guarantees were negotiated partly in Massachusetts, this case still would come within the literal language of the Long Arm Statute. This is because the negotiation and execution of the guarantees in fact was not the transaction of business separate and distinct from the negotiation of the underlying construction contracts. The guarantees are tied inextricably to the obligations and performance of the Mall Agreement. Breach of the former can not be proved without reference to the latter. Moreover, it is obvious that Burd's and Schnip's purpose in executing the guarantees was to provide an economic benefit to Schnip Corp., with whose future their own prosperity was tied. Therefore, the Court rules that the activities undertaken by Burd and Schnip to procure the Mall Agreement properly are considered in determining whether jurisdiction exists in this case.[1]

This Court's determination of the statutory question is controlled to a large degree by the First Circuit's recent decision in *Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928 (1st Cir.1985). There the defendant guarantor was an Ohio corporation whose agents were never physically present in Massachusetts. The guarantor executed the guarantee in order to enable its president's brother to obtain credit from the plaintiff, a Massachusetts corporation. The defendant guarantor's contacts with Massachusetts, other than the execution of a guarantee to a Massachusetts resident, consisted of mailing four letters to Massa-

chusetts in the course of negotiating the guarantee. The court of appeals found these actions to be "within the reach of § 3(a)." *Id.* at 932. In so holding the court specifically "reject[ed] the argument that the assertion of jurisdiction under § 3(a) is unauthorized here simply because [the Ohio guarantor] has transacted no business *other than* the execution of the guarantee in question." *Id.* at 932 (emphasis in original). In this case, the negotiation of the guarantee and the underlying contract in Massachusetts, along with the execution of the guarantee itself, satisfies the literal requirement of § 3(a) that the cause of action arise out of the defendants transacting business in Massachusetts.

Having determined that the "literal" requirements of § 3(a) are satisfied, the question of whether jurisdiction is "authorized" by the statute "tend[s] to converge" with the constitutional question. *Good Hope Industries v. Ryder Scott Co.,* 378 Mass at 6, 389 N.E.2d 76. This is because "§ 3 cannot authorize jurisdiction which is constitutionally unacceptable, even though the fact pattern asserted in support of jurisdiction apparently satisfies the statute's literal requirements." *Id.* at 6, 389 N.E.2d 76.

■ The Due Process clause of the 14th Amendment dictates that a state may exercise *in personam* jurisdiction over a nonresident defendant only if "maintanence of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This now familiar test often is referred to as "minimum contacts" analysis. The label is misleading, however. For it is not only the number of contacts, but also the "quality and nature of the activity" that determines whether due process is satisfied. *Id.* at 319, 66 S.Ct. at 160; *cf. McGee v. International Life Insurance Co.,* 355

---

1. Burd and Schnip argue that any activities they engaged in as officers of Schnip Corp. should not be considered transacting business for purposes of a suit brought against them personally. The "general rule is that jurisdiction over the individual officers of a corporation may not be based *merely* on jurisdiction over the corpora-

tion." *Escude Cruz v. Ortho Pharmaceutical,* 619 F.2d 902, 906 (1st Cir.1980). This does not mean, however, that a court may not look to the officer's actual activities, or the personal economic benefit the officer may expect to derive from the transactions.

U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (delivery of one insurance contract in forum state a sufficient contact). Where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," *Hanson v. Denkla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), he "should reasonably anticipate being hauled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ Where an out-of-state party contracts with a resident of the forum state, that contract *alone* does not establish sufficient minimum contacts. *Burger King Corp. v. Rudzewicz*, ── U.S. ──, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). But where the out-of-state party's actions are "purposefully directed" towards residents of the forum state, and he has "created 'continuing obligations' between himself and residents of the forum ... he manifestly has availed himself of the privilege of conducting business there, and ... it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.*, 105 S.Ct. at 2184 (citations omitted). Applying these standards to the case at bar, the Court rules that exercise of jurisdiction over Burd and Schnip is consistent with the due process clause because they have availed themselves of the benefits and privileges of doing business in the commonwealth. In their attempts to bind Beaver into a complex contractual relationship with Schnip Corp. both were physically present in Massachusetts, both directly negotiated the terms of the guarantees and the underlying contracts, and both executed their personal guarantee to the Massachusetts plaintiff.

This case is distinguishable from *Bond Leather*, where the requisite contacts between the defendant guarantor and Massachusetts were found to be lacking. There the defendant did not participate directly in negotiating the terms of the guarantee. 764 F.2d at 934. Nor did any commercial benefits flow to it as a result of the guar-

antee. *Id.* at 934. Thus, no intent on the part of the defendant to exploit the local economy was shown. Here, Burd and Schnip executed the guarantees because it would benefit them in their business. They "deliberately chose to do business with a Massachusetts resident, presumably because it was to [their] advantage." *Carlson Corp. v. University of Vermont*, 380 Mass at 109, 402 N.E.2d 483.

Accordingly, the motions to dismiss are DENIED.