Hinkle, J.
After a two day jury-waived trial held on February 18 and 19, 1999, involving the plaintiff and defendant Lars Bildman, I make the following findings of fact, each by a preponderance of the credible evidence.
BACKGROUND
1. On January 15, 1999, I issued a Memorandum of Decision and Order on defendants’ motions for summary judgment on all claims and plaintiffs motion for summary judgment on liability. 
2. In the Memorandum of Decision, I denied Bildman’s motion for summary judgment as to so much of Count I of the First Amended Complaint as alleged breach of contract based upon: (1) statements made by Bildman’s personal counsel, Eckert Seamans Cherrin & Mellott, LLC, to the news media; and (2) Bildman’s denials of plaintiffs sexual harassment claims after January 5, 1996.
3. In my Memorandum of Decision, I ruled that Bildman had not established, on the summary judgment record, that a judicial proceeding was contemplated in good faith and was under serious consideration by Bildman or against him at the time statements were made by Eckert Seamans on Bildman’s behalf in order to render the attorney statements privileged as a matter of law. I stated that facts might be subsequently established to demonstrate that the privilege applied as,a matter of law.
4. On January 28, 1999, the parties submitted a joint pre-trial memorandum and appeared at a pretrial conference. Bildman requested a separate eviden-tiary hearing to decide the issue of whether a judicial proceeding was contemplated in good faith and was under serious consideration by Bildman or against him at the time statements by Eckert Seamans were made for the purpose of establishing the privilege.
5. I granted Bildman’s request for an evidentiary hearing on the privilege and set February 18, 1999 as a trial date.
6. At the pre-trial conference I informed counsel that the case would be conferenced before commence *87 ment of trial on February 18, 1999. I informed plaintiffs counsel that he should be prepared to provide specific evidence to show that an issue of fact on the attorney privilege remained to be tried.
7. At the pre-trial conference, counsel for Bildman stated that he was not claiming a jury trial. Plaintiffs counsel subsequently notified this Court that plaintiff claimed a jury trial. Counsel for Bildman objected to the jury trial claim.
8. On February 16, 1999, Bildman filed amotion to establish absolute privilege on attorney statements, as well as an affidavit of Lars Bildman[1] and of Carl-Gustaf Johansson.
9. On February 18,1999, the parties appeared for trial on the issue of whether a judicial proceeding was contemplated in good faith and was under serious consideration by Bildman or against him at the time Eckert Seamans made statements reported in the media.
10. After addressing the defendants’ motion to quash subpoena, I addressed Bildman’s motion to establish absolute privilege on attorney statements. Counsel for Bildman argued that plaintiff had not and could not come forward with any evidence to show that a factual issue remained to be tried on the attorney privilege as required by this Court during the January 28, 1999 pre-trial conference.
11. I then asked plaintiffs counsel to provide specific evidence to rebut Bildman’s position that no factual dispute remained to be tried on the privilege. After plaintiffs counsel failed to offer any such evidence, I requested plaintiffs counsel to make a proffer as to what evidence plaintiff intended to introduce to rebut Bildman’s proof.
12. Plaintiffs counsel then proffered that plaintiff anticipated that the evidence would show that Bildman sought out and hired MacLeish as his public relations advisor, not his attorney. Plaintiffs counsel further offered that the evidence would show that Bildman sought out and hired MacLeish as a person savvy in media communication to rehabilitate the negative press Bild-man was experiencing and to save Bildman’s career.
13. Based upon this proffer, I allowed the case to proceed to trial on the sole issue of whether a judicial proceeding was contemplated in good faith and was under serious consideration by Bildman or against him when Eckert Seamans made statements reported in the media on his behalf during the time period of May 1, 1996 through May 8, 1996.[2]
14. Counsel for Bildman then renewed his objection to a jury trial on the limited issue of the attorney privilege. Based upon the case of In Re: Reorganization of Electric Mutual Liability Insurance Co., Ltd., 425 Mass. 419, 421 (1997), and in the absence of any authority to the contrary offered by plaintiff, or known to the Court, I ruled that a proceeding to establish the privilege on attorney statements involved issues similar to a proceeding to establish the attorney-client privilege, to be tried by a judge without a jury.
15.Trial then commenced. Counsel for Bildman called Roderick MacLeish, Jr. as his witness. Plaintiff called Treazure Johnson, another attorney from Eckert Seamans representing Bildman, as his witness. Twenty exhibits were introduced into evidence.
FINDINGS OF FACT
1. I ruled in my Memorandum of Decision that all statements by Eckert Seamans following and responding to plaintiffs filing of her lawsuit in this Court on May 8, 1996 were privileged. (Memorandum of Decision and Order, p. 18, fn. 14.)
2. Thus, the relevant period at issue for the purpose of establishing the attorney privilege at this trial is limited to May 1, 1996 through the time plaintiffs lawsuit was filed on May 8, 1996.
3. The parties stipulated that the following statements reported in the media attributed to counsel for Eckert Seamans on behalf of Bildman constituted the “challenged statements” for the purpose of this proceeding: (1) Boston Globe, May 3, 1996; (2) Wall Street Journal, May 3, 1996; and (3) Boston Herald, May 4, 1996.
4. Plaintiff asserts that the challenged statements should also include the May 2, 1996 Business Week article, the May 7, 1996 Boston Herald article, and the May 7, 1996 Boston Globe article. Bildman disputes this. However, for purposes of this trial, I need not decide this issue.
5. MacLeish is one of the attorneys representing Bild-man in this action. He is a member of the law firm of Eckert Seamans. A 1978 graduate of Boston University School of Law, he became a member of the Massachusetts bar following a clerkship which concluded in 1979.
6. MacLeish, at all relevant times, has been a member of the litigation department of Eckert Sea-mans and concentrates his practice in civil litigation. During his career, MacLeish has handled a variety of litigation matters, including commercial litigation, employment litigation and litigation on behalf of various human service providers.
7. Treazure R. Johnson, at all relevant times, has also been a member of Eckert Seamans. She is a member of the litigation department and has a background in both employment law and white collar criminal matters.
8. Starting in 1991 or 1992, MacLeish served as an unpaid “legal editor” for New England Cable News. MacLeish performed legal analysis from time to time for the station in order to put various legal issues of public interest in terms that lay people could understand.. During his career he has been interviewed by other news organizations regarding various litigation matters in which he has represented clients.
9. MacLeish testified that he has not worked for a public relations firm and is not a “publicist.” Neither *88 MacLeish nor Johnson held themselves out as publicists during the relevant time period.
10. On April 30, 1996, MacLeish received a telephone call at his office from Bildman concerning potential legal representation. At the time of the call, Bildman had recently been suspended as CEO and President of defendant Astra. MacLeish and Johnson went to Bildman’s home and met with Bildman for six or seven hours.
11. The purpose of the meeting with Bildman on April 30, 1996 was to commence an attorney-client relationship for the purpose of providing Bildman with legal representation in connection with a variety of contemplated legal matters, including judicial proceedings.
12. At the meeting on April 30, 1996, MacLeish and Johnson reviewed a number of documents. Those documents included two letters from Business Week dated April 18, 1996 and April 24, 1996, containing accusations against Bildman and Astra which, if true, would support allegations of misconduct by Bildman that could be actionable.
13. MacLeish also reviewed a letter dated April 28, 1996 from Carl-Gustaf Johansson in which Astra notified Bildman of its Board’s emergency vote to suspend and remove him from his position as President, CEO, and Director “pending an investigation into allegations regarding various events of which you are aware, as well as other matters which if substantiated would result in your termination for cause.”
14. The April 28, 1996 letter also stated that Jan Larsson had been selected as interim president and chief executive officer of Astra. The letter barred Bildman from unilateral access to the company. Bildman was instructed to return all property of Astra within his possession. The letter further advised Bildman that the “professionals currently retained represent the company and not you personally and, therefore, if you desire separate counsel you should consider other firms.”
15. At the April 30 meeting, MacLeish also reviewed a press release issued by Astra on April 29, 1996. Astra issued the press release immediately after Bildman’s suspension. In the press release, Astra announced that the board of directors had elected Jan Larsson as the new president and chief executive officer to replace Bildman.
16. Astra also stated in the press release that Bildman’s suspension and replacement by Larsson was the result of a “preliminary investigation by senior company officials.” The press release warned that “additional actions could follow” depending upon the findings of the internal investigation, and that Astra’s continuing investigation of Bildman would include “an examination of allegations of sexual harassment and of other activities considered inappropriate by the company.” The press release listed Ben Kincannon as the “acting spokesman” of Astra.
17. Astra’s press release with Bildman’s suspension began a legal battle between Astra and Bildman, and provided objective indicia that a judicial proceeding was under consideration by Astra against Bildman or vice versa.
18. At the April 30 meeting, MacLeish reviewed Bildman’s employment agreement with Astra. Johansson’s letter of April 28, 1996 warned Bildman that Astra’s investigation could result in Bildman’s termination “for cause” based upon wrongdoing.
19. On May 1, 1996, Bildman executed a fee agreement with Eckert Seamans outlining the terms of legal representation in a matter described as “Wrongful Suspension.”
20. The scope and subject matter of the representation provided by Eckert Seamans to Bildman following the April 30 meeting included the imminent termination of Bildman for cause by Astra; various actions that Bildman might file against Astra to enforce his employment agreement; actions against Astra for defamatory remarks in the April 29, 1996 Boston Globe; litigation filed by potential sexual harassment complainants against Bildman that counsel reasonably believed would follow in the event the Business Week reached a national audience; a potential defamation action against Business Week; and potential investigations by law enforcement agencies based upon Astra’s public allegations of corporate improprieties against Bildman.
21. An attorney-client relationship was established between Eckert Seamans and Bildman on April 30, 1996 and formalized in a fee agreement on May 1, 1996. The purpose of the retention was for Eckert Seamans to represent Bildman in contemplation with multiple judicial proceedings involving Bildman that were seriously considered as of April 30.
22. MacLeish and Bildman contemplated a number of judicial proceedings involving Bildman as of April 30, 1996. The Business Week letters, the suspension letter, and Astra’s press release support that this belief was reasonable.
23. On May 1, 1996, a number of events occurred. MacLeish sent a letter via facsimile and Federal Express to Johansson announcing his representation of Bildman as counsel. The purpose of MacLeish’s letter was to establish Bildman’s legal position that the action of Astra in suspending Bildman violated his employment contract. MacLeish stated that Bildman reserved all his legal rights against Astra, as well as its Swedish parent company, Astra AB, for any actions taken in contravention of the terms of his employment agreement. The letter further stated that Bildman considered Astra’s conduct reckless for publishing defamatory statements to the press with respect to the reasons for Bildman’s suspension. The letter sought to obtain the results of the “initial inquiry” referred to in Astra’s press release of April 29, 1996. The letter advised Johansson that Bildman would take all actions available to him by law to remedy the defamatory statements contained in press releases. MacLeish further advised Johansson to refer his letter of May 1, 1996 to company counsel.
*89 24. MacLeish stated in his May 1,1996 letter that “no documentation generated in connection with the preparation of these responses to the Business Week inquiries be destroyed and that no documents concerning his client be destroyed.” The purpose of this demand was to ensure the preservation of the evidence that would be useful and necessary in a judicial proceeding by or against Astra, as well as actions by sexual harassment claimants that MacLeish believed were likely to be filed.
25. MacLeish’s letter to Johansson demonstrates that a judicial proceeding was contemplated in good faith and was under serious consideration by Bildman against Astra as of May 1, 1996.
26. During the afternoon of May 1, 1996, MacLeish spoke with Mark Maremont, the Business Week bureau chief who was the author of the April 18, 1996 and April 24, 1996 letters. MacLeish followed up the telephone conference with a letter to Maremont dated May 1,1996, advising him of MacLeish’s representation of Bildman. The letter requested that Bildman have the opportunity to respond to the new allegations contained in the April 24, 1996 letter “through his counsel.” The letter also stated that the allegations contained in Maremont’s letter of April 24, 1996 were false and defamatory, and that if they were printed it would be “in reckless disregard of the truth or falsity of these allegations.”
27. MacLeish’s letter to Maremont also demonstrates that a judicial proceeding was contemplated in good faith and was under serious consideration by Bildman against Business Week as of May 1, 1996. Kenneth Vittor, counsel to Business Week, responded to MacLeish’s May 1, 1996 letter to Maremont.
28. Following his letter of May 1, 1996, MacLeish received a telephone call from Maremont indicating that there would be no meeting, and that any statement by Bildman had to be received that day. Accordingly, MacLeish sent a statement authorized by Bildman to Business Week. The statement referenced that a meeting had been previously scheduled by Astra with Business Week for May 2, 1996 at 9:00 a.m. to discuss the allegations contained in Maremont’s letter of April 24, 1996, and that Business Week had refused to provide Bildman with the opportunity to respond meaningfully to the allegations made against him. Bild-man stated in this communication that he categorically denied the allegations. No mention was made of plaintiff.
29. On May 1, 1996, the Boston Globe reported that the filing of litigation by a former Astra employee, Kim Cote, against an employee of Astra who was not Bild-man. MacLeish read this and concluded that Cote filed the action based upon alleged wide-spread sexual harassment at Astra despite having previously settled her claims. MacLeish testified that this publicily further confirmed his view that new lawsuits against Bildman were likely.
30. On May 2, 1996, the controversy involving Astra and Bildman intensified. MacLeish was contacted by counsel for Astra, Francis Carling. The call concerned, among other things, the return of documents of Astra allegedly in the custody of Bildman which Carling alleged belonged to the company. Threats of legal action were made if the documents were not returned.
31. The controversy over these documents was repeated in a letter to MacLeish from Carling dated May 3, 1996, where he re-stated Astra’s “demand” to Bildman that he return all Astra property in his possession. MacLeish declined to return documents to Astra because he believed there was a legal issue about the right to the documents, and because he regarded the documents as necessary to the various judicial proceedings.
32. On May 2, 1996, MacLeish received numerous calls from press representatives, both at his office and at home, regarding the Business Week allegations. At this point MacLeish was also confronted by the press with allegations made by Ben Kincannon, Astra’s spokesperson, that Bildman had been personally involved in some of the sexual harassment allegations and had failed to inform the company officials in Sweden. In addition, he was confronted by the press with allegations that Bildman was involved in financial improprieties involving the company. MacLeish denied the allegations of wrongdoing, including Bildman’s involvement with sexual harassment.
33. MacLeish made the challenged statements to reporters on May 2 which were reported both in the Wall Street Journal and Boston Globe on May 3.
34. A reporter from the Boston Herald, Jeffrey Krasner, called Eckert Seamans on May 3 about Bild-man. Johnson denied allegations of Bildman’s wrongdoing, including sexual harassment.
35. MacLeish and Johnson made these statements to the media as attorneys for Bildman in contemplation of judicial proceedings by and against Bildman. In other words, the challenged statements were pertinent to a proceeding contemplated by or against Astra.
36. It is not necessary for the Court to find that the specific comments made by MacLeish and Johnson were pertinent to or in contemplation of any specific legal proceeding.[3] By the unrebutted evidence presented during trial, both Bildman and MacLeish contemplated in good faith and with reasonable cause multiple judicial proceedings as early as April 30, 1996. This Court further finds that their beliefs were verified by the events that followed April 30, 1996.
37. On May 6, 1996, MacLeish sent Attorney Car-ling a letter which referred to a number of matters. MacLeish demanded that Astra and its public relations firm cease their attack on Bildman. The letter also referenced the documents issue which had been the subject of MacLeish’s communications with Astra counsel on May 2, 1996, as well as Astra’s use of private investigators to follow Bildman.
38. Plaintiff argues that Carling’s letter of May 7, 1996 accusing MacLeish of writing his letter of May 6, *90 1996 for a “public audience” prove that MacLeish was a publicist. (Exhibit 18.) Plaintiff, however, never called Carling to testify at trial to verify the statement, and the letter was not admitted for the truth of the matter asserted. Moreover, as MacLeish testified, his letter of May 6, 1996 was not released to the public, and Carling’s self-serving statement, particularly in light of Astra’s press releases and public statements attacking Bildman, appear disingenuous.
39. On May 8, 1996, Bildman through Eckert Sea-mans filed a complaint for declaratory judgment in Norfolk Superior Court concerning the dispute over Bildman’s custody of the documents which Astra alleged he had no right to retain. These documents were the subject of both oral and written communication between Carling and MacLeish starting on May 2, 1996. The Norfolk complaint constitutes a judicial proceeding which both Astra and Bildman contemplated as early as May 2, 1996.
40. On May 30, 1996, a sexual harassment complaint involving five parties was filed against Bildman, Astra, and other parties.
41. Plaintiff argues that the two page list of names introduced as exhibit 15 supports her assertion that Eckert Seamans was employed as a public relations firm. This Court finds to the contrary. MacLeish testified, without any evidence to the contrary, that the list was not a “press contact sheet.” The first page of this document was prepared on May 16,1996 at 7:08 p.m. The first page lists the names and telephone numbers of individuals who were identified as attorneys, including the attorney for Astra and Business Week magazine. Others on the first page, such as C.G. Johansson, were not attorneys.
42. The second page of Exhibit 15 is a press list which reflects names of press individuals who had called into Eckert Seamans after Eckert Seamans was identified as counsel for Bildman.
43. Thus, this Court finds and rules that no credible evidence supports the proffer of plaintiffs counsel that MacLeish was hired as a publicist to save Bildman’s reputation. Apart from the May 1, 1996 communications with Business Week in which MacLeish outlined Bildman’s legal position, plaintiff did not come forward with any document prepared by Eckert Seamans during the relevant time period directed to any media source for the sole purpose of releasing information to the media about Bildman.
RULINGS OF LAW
1.Under Massachusetts law, an attorney’s statements are absolutely privileged “where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." Sriberg v. Raymond, 380 Mass. 105, 108-09 (1976). See also Blanchette v. Cataldo, 734 F.2d 869, 877 1st Cir. 1984 (applying Massachusetts law); U.S. v. RockLand Trust, 860 F.Sup. 895 (D.Mass. 1994) (applying Massachusetts law).
2. The Court in Sriberg reiterated the public policy interests underlying the privilege afforded to counsel for any and all communications made within the context of actual or threatened litigation:
It is, on the whole, for the public interest, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech in conducting the causes and advocating and sustaining the rights of their constituents; and this freedom of discussion ought not to be impaired by numerous and refined distinctions.
Sriberg, supra at 109, quoting Hoar v. Wood, 3 Met. 193, 197-98 (1841).
3. Statements by attorneys are absolutely immune from all civil liability where such statements are relevant or pertinent to a judicial proceeding. Sriberg, supra at 108-09. Sullivan v. Birmingham, 11 Mass.App.Ct. 359, 367(1981); Theran v. Rokoff, 413 Mass. 590, 591-92 (1992); Doe v. Nutter McLennen Fish, 41 Mass.App.Ct. 137, 140 (1996).
4. The relevancy or pertinency requirement for attorney statements is broadly construed. See Sullivan v. Birmingham, 11 Mass.App.Ct. at 362; Aborn v. Lipson, 357 Mass. 71, 73 (1970); Blanchette v. Cataldo, 734 F.2d at 877.
5. In order to be pertinent and privileged, an attorney’s statement “must have some reference to the subject matter of the proposed or pending litigation although it need not be strictly relevant to any issue involved in it. . . Such a broad standard of relevancy protects the integrity of the adversarial system, while still providing some limitation on malicious conduct.” Leavitt v. Bickerton, 855 F.Sup. 455, 456-57 (D.Mass. 1994) (applying Massachusetts law).
6. The absolute privilege applies where any judicial proceeding is contemplated in good faith and is under serious consideration by the attorney. Smith v. Suburban Restaurants, Inc., 374 Mass. 528, 531 (1978).
7. To find under the circumstances of this case that MacLeish and Johnson were barred from making general denials about serious allegations of misconduct involving their client would be contrary to the principles enunciated in Sriberg and Gentile, supra, and would have a chilling effect upon an attorney’s ability to represent his client zealously.
ORDER
For the foregoing reasons, the Court hereby ORDERS that:
1. The challenged statements by Eckert Seamans on behalf of Bildman are privileged and immune from liability;
2. Judgment shall enter in favor of Bildman against plaintiff on plaintiffs remaining breach of contract claim in Count I of plaintiffs First Amended Complaint, except *91 so much of Count I as alleges a breach of contract based upon Bildman’s denials of plaintiffs sexual harassment claims after January 5, 1996, which appeared in the May 2, 1996 Business Week magazine article.

Bildman, who is currently incarcerated on federal charges unrelated to this case, did not therefore appear at this trial. I have not taken Bildman’s or Johansson’s affidavits into consideration in this opinion.

No dispute exists that this is the relevant time period.

Plaintiff was not mentioned by name. MacLeish testified that one of his comments to the Boston Globe and Wall Street Journal to the allegations of sexual misconduct by Astra was a reference to plaintiffs allegations which had been published as the lead paragraph in the Business Week article of May 2, 1996. MacLeish, who had not seen a copy of plaintiffs settlement agreement at this time, testified that the purpose of this remark was in response to specific inquiries about sexual misconduct involving his client and was not designed to show that the nature of the allegations against his client (i.e., flirting and dancing too close) were not as serious as other forms of sexual harassment.