## E.N. *vs.* E.S.

No. 05-P-270.

Barnstable. January 11, 2006. - August 22, 2006.

Present: DUFFLY, DREBEN, & CYPHER, JJ.

*Divorce and Separation,* Child custody, Modification of judgment. *Minor,* Custody. *Parent and Child,* Custody of minor. *Massachusetts Child Custody Jurisdiction Act. Parental Kidnapping Prevention Act. Jurisdiction,* Probate Court. *Probate Court,* Jurisdiction.

A Probate and Family Court judge properly exercised jurisdiction to issue the divorce judgment awarding custody to the mother of her two children where, under the Massachusetts Child Custody Jurisdiction Act (MCCJA), G. L. c. 209B, Massachusetts was the home State when the mother's divorce action was filed, because the mother and the older child had been living in Massachusetts for nearly nine consecutive months when she commenced the divorce action [191-193]; and where, under the provisions of the MCCJA and the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, the exercise of jurisdiction was appropriate, in that the child was not the subject of a previously issued valid judgment or order of the Puerto Rico courts awarding custody to the father when the mother filed the divorce action in Massachusetts [193-197].

A Probate and Family Court judge did not abuse his discretion by declining to modify a divorce judgment to award the father sole legal and physical custody of the children or to allow the father to remove the children to Puerto Rico. [197-199]

COMPLAINT for divorce filed in the Barnstable Division of the Probate and Family Court Department on April 13, 2001.

A complaint for modification of judgment, filed on December 16, 2002, was heard by *Robert E. Terry,* J.

*Marlene Aponte Cabrera,* of Puerto Rico, for the father.

DUFFLY, J. We are asked to decide whether child custody provisions of a divorce judgment of the Probate and Family Court may be challenged by the plaintiff, E.N. (father), in a subsequent proceeding. The father claims that the Probate and Family Court lacked jurisdiction over the issue of custody as it

relates to the parties' older child, who was born in Puerto Rico. Without the father's consent, the defendant, E.S. (mother), removed that child to Massachusetts where she has family, there obtaining an abuse prevention order on allegations of abuse by the father that were, in a later proceeding, credited by a judge of the Probate and Family Court following trial.

The father did not appeal the October 22, 2001, judgment of divorce nisi awarding to the mother sole legal and physical custody of that child and of a second child who was born to the parties in Massachusetts, following their separation.[1] Instead, well over a year later, on December 17, 2002, the father filed a complaint for modification in the Probate and Family Court alleging a change in the children's circumstances and requesting sole legal and physical custody and the right to remove the children to Puerto Rico, as well as modification of his support obligations. On the day scheduled for trial on the modification complaint (and other consolidated matters, see *infra*), the father filed a motion pursuant to G. L. c. 209B, § 12(*a*), seeking recognition and enforcement in the Probate and Family Court of a judgment of the Superior Court of Bayamón, Puerto Rico, dated April 18, 2001, granting him custody of the older child. The father also filed a "motion to dismiss," in essence challenging the authority of the court to exercise jurisdiction with respect to the older child. After a trial, the probate judge rejected the father's jurisdictional arguments. Treating the motion as an alternative claim for relief, the judge then proceeded to address the merits of the father's complaint and denied the father's request to modify the divorce judgment and remove the children to Puerto Rico.

Our resolution of the issues differs somewhat from that of the probate judge, whose decision we affirm. We conclude that, under applicable provisions of the Massachusetts Child Custody Jurisdiction Act (MCCJA), G. L. c. 209B, and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (1994 & Supp. 2006), Massachusetts had jurisdiction to issue an initial custody determination; such jurisdiction was properly exercised in connection with the mother's divorce action.

---

[1] Indeed, the father visited the children in Massachusetts in December of that year, and again during January and February, 2002.

*Background facts and proceedings.* The parties were married in Puerto Rico on April 15, 1996, and the first of the two children was born there on March 26, 1997. The marriage was unhappy and, as found by the probate judge, beginning in 1999, the father was "physically, verbally, and emotionally abusive to the [mother] and the children."[2] The parties separated on October 15, 1999; on October 18, the father filed a custody petition in Puerto Rico, alleging that the mother had abandoned the child.[3] Following a hearing in Puerto Rico (not attended by the mother), the father was awarded temporary custody of the child until January 31, 2000, when the order expired.[4] After a brief reconciliation that ended in January, 2000, the mother became pregnant with the parties' younger son. See note 2,

[2]Findings of the probate judge, issued following a trial on the father's complaint for modification and consolidated matters, in which both parties testified, detail a history of physical and verbal abuse, and threats by the father. There were several occasions when the father "slapped, pushed, and punched the [mother] at times when she was holding the [older] child." In one incident in 1999, the father, a police officer, "put a gun to the [mother's] head. The [father] took a bullet out of the top of the chamber of the gun, put it on a counter and told the [mother] the bullet had her name on it." Several times in 1999, "and continuing to July, 2000," the father hit the older child "with his leather police belt." At other times he "would scream at the child" and "leave his gun lying around in the house on the night stand, on the kitchen counter, and on the kitchen table. The [mother] observed [the older child] pick up the gun on three different occasions." The judge found that the younger child was the product of the father's having forced the mother to engage in sexual relations with him.

[3]The father's claim of abandonment appears, in a judgment issued in April, 2001, to have been accepted by a judge in Puerto Rico. See discussion, *infra.* Later, however, following trial on the father's modification complaint, the Massachusetts probate judge found that the mother had long been the victim of serious physical abuse inflicted by the father, see note 2, *supra,* and that on the day of the parties' October, 1999, separation, he broke down the door to a room in the parties' residence in which the mother had locked herself with the child, took the child, and kept the child from the mother for two months.

[4]The father has not included a copy of the order in the record. He concedes that the temporary custody order expired by operation of law on January 31, 2000. This also appears to be the opinion of two different judges in Puerto Rico acting on petitions filed by the father. See notes 12 and 15, *infra.* Compare *S.B.* v. *Alaska Dept. of Health & Social Servs.,* 61 P.3d 6, 11 (Alaska 2002) (guardianship order, which terminated upon the guardian's death, did not constitute an initial custody determination); *In Re Oates,* 104 S.W.3d 571, 576 (Tex. Ct. App. 2003) (temporary conservatorship order that terminated upon the death of the conservator did not constitute an initial custody determination).

*supra.* They separated again, and on March 1, 2000, the mother relocated to Massachusetts without the older child, initially renting a room in her sister's house.

In July, 2000, then some six months pregnant, the mother returned to Puerto Rico. On July 25, 2000, she asked that the father allow her to spend some time with the older child. Rather than return the child to the father at the end of the day, as she apparently had promised, the mother removed the child to Massachusetts.

The next day, July 26, 2000, the mother — citing a two-year history of physical and emotional abuse by the father against her and the child — obtained in the Probate and Family Court an abuse prevention order against the father that also awarded her custody of the older child.[5]

Meanwhile, in Puerto Rico, the father sought to initiate criminal proceedings against the mother. On August 28, 2000, a judge of "the Court of First Instance, Bayamón Part," issued a warrant for the mother's arrest on the ground of an asserted violation of the Puerto Rico Penal Code.[6] On January 18, 2001, the mother was arrested on the warrant and detained at the Barnstable house of correction.

Upon the mother's arrest, the older child was briefly placed in the custody of the Department of Social Services (department).[7] That same day, the father traveled to Massachusetts to retrieve the older child and was interviewed by the department concerning the allegations of abuse the mother had made against him in connection with the restraining order of July 26, 2000. The next day, January 19, 2001, the maternal grandmother filed in the Probate and Family Court a petition for temporary guardianship, in which she asserted the need to

---

[5]The restraining order was thereafter twice extended. The father was served with a copy on January 19, 2001. On February 6, 2002, the restraining order was vacated on the mother's motion, in which she stated that the parties were attempting to work things out for the benefit of the children and that the father was in counseling.

[6]Neither the basis for issuance of the warrant nor the present status of the criminal proceeding appears in the record.

[7]The mother had given birth to the parties' younger child in Massachusetts a few months earlier, on November 3, 2000. The record does not reflect who had custody of the newborn during the mother's brief detention.

protect the children from abuse by the father. The father filed an opposition to the petition. A hearing was held, and on January 19, 2001, a judge of the Probate and Family Court[8] granted temporary custody of both children to the maternal grandmother, to expire on April 19, 2001.

In his findings on the order for temporary guardianship, the probate judge found that Puerto Rico was then the home State[9] of the older child and that Massachusetts was the home State of the younger child.[10,11] The probate judge entered his order pursuant to the emergency jurisdiction provision of the MCCJA, G. L. c. 209B, § 2(*a*)(3), on findings that an emergency existed and that the older child may have been subject to mistreatment and neglect by either or both parents.[12]

On February 12, 2001, the father filed a petition for habeas corpus in the Superior Court of Bayamón, Puerto Rico, request-

---

[8]Beginning with the grandmother's petition for temporary guardianship, this probate judge heard most aspects of the case touching on custody of the children, including the mother's divorce action and the father's subsequent modification complaint.

[9]The Commonwealth of Puerto Rico is included in the definition of "State" for purposes of the PKPA. 28 U.S.C. § 1738A(b)(8).

[10]See the MCCJA, G. L. c. 209B, § 1, inserted by St. 1983, c. 680, § 1 (defining "home state" as "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with . . . a parent . . . for at least 6 consecutive months"). A similar provision is contained in the PKPA, 28 U.S.C. § 1738A(c)(2)(A).

[11]Although the finding that Puerto Rico was the older child's home State was correct when it was made, on January 19, 2001 (because it would not be until January 26, 2001, that the older child had lived in Massachusetts for six months), it is not dispositive of the issue on appeal. As we shall discuss, home State jurisdiction in Massachusetts was acquired by the time the mother filed her divorce complaint on April 13, 2001, seeking, inter alia, custody of the children.

[12]Soon after the probate judge issued the temporary guardianship order, he conferred by telephone with the judge in Puerto Rico who had issued the warrant for the mother's arrest, as encouraged by G. L. c. 209B, § 7(*c*) ("In order to determine whether it is the appropriate forum, a court of the commonwealth may, in its discretion, at any time during the pendency of the custody proceeding, communicate and exchange information with a court or courts of any other relevant jurisdiction."). The probate judge learned from the judge in Puerto Rico that the arrest warrant against the mother had been based upon the temporary order issued in Puerto Rico in October, 1999, granting the father custody of the older child and that under Puerto Rico's rules of civil procedure, such temporary orders expire if they do not proceed to a permanent order within ninety days — here, in January, 2000.

ing that the court grant him custody of and "patria potestas" over the older child.[13] The older child had not lived in Puerto Rico for the six-month period preceding the filing of this petition, and thus Puerto Rico was not then the child's home State.

On April 13, 2001 — by which time the older child had lived in Massachusetts for nearly nine consecutive months — the mother filed a complaint for divorce in the Probate and Family Court, requesting, among other things, custody of the children. The father, who concedes he was served with process, filed an answer to the complaint stating that the Probate and Family Court lacked jurisdiction over the custody of the older child. Referring to the facts that the child was born in Puerto Rico and that "the cases [regarding custody of the child] started in the court of Puerto Rico and in the jurisdiction of Puerto Rico [in] October 18, 1999," the father claimed in his answer that "[p]ursuant to the provisions of sec. 1738A of the Parental Kidnapping Prevention Act of 1980, Puerto Rico is the state with jurisdiction over the [older child]."

A judgment of the Superior Court of Bayamón dated April 18, 2001 (and bearing a certificate of authentication dated April 19, 2001),[14] granted the father's petition for custody and patria

---

[13]Under the current laws of Puerto Rico, the concept of "patria potestas" (literally, "paternal power," see Black's Law Dictionary 1206 [8th ed. 2004]) no longer connotes that the father is the head of the family. See 31 L.P.R.A. § 591 (1993) ("patria potestas over unemancipated children belongs to both parents, jointly"). Today, the attributes of patria potestas are consonant with the Massachusetts concept of legal custody. Apart from physical possession or custody, patria potestas imparts to a parent or guardian certain rights and obligations concerning the child, including the obligation to provide the child with reasonable sustenance, clothing, shelter, education, and health care consistent with his or her financial means; to supervise the child's education and development; to prevent predictable harm or injury to the child's physical, mental, emotional, and moral health; and to have the care and guardianship of the child. See 31 L.P.R.A. §§ 601, 634a (1993 & Supp. 2004); *Ex parte Torres*, 18 P.R. Offic. Trans. 549, 554-558 (1987). See also *Rodriguez Mejias* v. *Puerto Rico*, 22 P.R. Offic. Trans. 790, 794-795 (1988) (patria potestas defined as a means by which parents "exercise their natural role of educating and protecting" their children). For a discussion of the origins and historical development of the concept, see *Whallon* v. *Lynn*, 230 F.3d 450, 456-457 & n.7 (1st Cir. 2000).

[14]The probate judge, and at times the father, refer to this judgment as bearing a date of April 19, 2001.

potestas over the older child and ordered that the child be brought immediately to the jurisdiction of Puerto Rico.[15]

In the meantime, the mother's divorce action proceeded in Massachusetts; temporary orders issued June 20, 2001, awarding her sole legal and physical custody of the children and directing the father to pay $100 per week for support of the mother and the children. In a memorandum and order on the motion for temporary orders issued the same day, the probate judge determined that Massachusetts had "subject matter" jurisdiction over the older child's custody on the basis that "no custody order had been in effect from another jurisdiction on either July 26, 2000 [when the abuse prevention order first issued], or [on] August 23, 2000 [when the restraining order was renewed]," and also "pursuant to G. L. c. 209B, § 2(a)(3)" (conferring emergency jurisdiction if the child is physically present in the Commonwealth and "it is necessary in an emergency to protect the child from abuse or neglect").[16]

[15]In the habeas corpus judgment, the judge of the Superior Court of Bayamón found that the mother (and the maternal grandmother) had been served personally with the father's petition. Neither the mother nor the maternal grandmother appeared at the hearing. The Bayamón court judge found that the mother had "unlawfully deprived [the older child] of his liberty when she removed him from the jurisdiction of Puerto Rico, thus depriving [the] father with patria potestas of custody of said minor." The judge noted that, although the temporary custody order had expired, the father continued thereafter to have physical custody of the child, until he was removed to Massachusetts by the mother without the father's consent or knowledge. The judgment also notes that the father had never been a resident of Massachusetts, he had not been served with the various abuse prevention orders, and the department found no basis for the allegations that the father had abused or neglected the child. The judgment concludes that the Probate and Family Court abuse prevention order dated July 26, 2000, was issued without jurisdiction over the father's person and thus lacked legal validity. Therefore, in the Bayamón court judge's view, the maternal grandmother was unlawfully exercising custody over the older child, which had been awarded to her "by virtue of" the July 26 order.

[16]Although not included in the record appendix, the probate judge summarized the June 20, 2001, memorandum in a later memorandum of law dated June 30, 2004, that is before us; counsel and the judge also read from it at the trial on the father's complaint for modification and we have before us the transcript of that trial (but not of the divorce trial). We also note that the father states in his motion to dismiss that the Probate and Family Court "assert[ed] . . . jurisdiction in the June 20, 2001 Memorandum of Law." As summarized by the probate judge in his later memorandum, in determining

On October 22, 2001, after a hearing before the probate judge (not attended by the father), a judgment of divorce nisi issued that, among other things, awarded the mother sole legal and physical custody of the children, ordered the father to pay $100 per week as child support (plus an additional $25 per week towards established arrearages), and divided the parties' property. The father (who concedes that he received a copy of the divorce judgment) did not appeal from the divorce judgment.

Also in October, 2001, a judgment entered dismissing the maternal grandmother's guardianship petition. A year later, on November 22, 2002, the maternal grandmother filed a second petition for temporary guardianship of the parties' children. In this petition, she alleged that the children had been neglected by the mother and also had been physically and possibly sexually abused by the mother's live-in boyfriend. The probate judge issued an order for temporary guardianship that same day.

Thereafter, on December 16, 2002, the father filed the within complaint seeking modification of the divorce judgment. In the complaint, the father acknowledged that the mother had earlier been awarded sole legal and physical custody of the children; he alleged as changed circumstances that, among other things, the children had been placed with the maternal grandmother as a result of an ongoing investigation in Massachusetts of abuse and neglect. The father requested that the divorce judgment be modified by granting him sole legal and physical custody of the children and the right to remove them to Puerto Rico. The mother responded with a complaint for contempt against the father alleging that he had failed to pay support as ordered.

On June 26, 2003, the day scheduled for trial of the pending consolidated actions — the father's complaint for modification, the mother's complaint for contempt, and the maternal grandmother's petition for guardianship — the father, through counsel, filed a "motion to domesticate foreign decree under G. L. c. 209B, § 12(*a*)," requesting that the Puerto Rico habeas corpus judgment granting him custody of the older child be

whether to exercise jurisdiction, he had on January 23, 2001, conducted a telephone conference with "Judge Eliseo Gaetan-y-Mejia of the Court of Puerto Rico regarding the matter of custody of [the older child]." See note 12, *supra*.

given full faith and credit. He also filed a motion to dismiss the modification and guardianship proceedings, alleging that the Probate and Family Court lacked jurisdiction under the MC-CJA, G. L. c. 209B, § 2(*d*), and the PKPA, 28 U.S.C. § 1738A(a). According to the father, because the Puerto Rico Superior Court's resolution of the custody issue (see note 15, *supra*) predated that of the probate judge's June 20, 2001, determination that Massachusetts had jurisdiction, the guardianship and modification actions should be dismissed and the Puerto Rico court's April 18, 2001, judgment enforced.[17]

Following trial on the consolidated actions, the probate judge denied the father's request for modification of the divorce custody order, dismissed the petition for guardianship, and adjudged the father in contempt for wilfully neglecting and refusing to pay child support. The judge concluded that the Probate and Family Court was not precluded from exercising jurisdiction with respect to the older child[18] and, on the merits of the complaint for modification and removal, that the father

---

[17]At the commencement of trial, counsel for the children (who had been appointed to represent their interests in the guardianship proceedings) objected to the probate judge's hearing the father's motions because they had been filed late and counsel was not prepared to address them. Counsel also argued, in essence, that the father's challenge to jurisdiction was too late, in that the father had filed an answer and submitted to the jurisdiction of the court in proceedings in which the judge had entered custody orders from which the father had taken no appeal.

In colloquy with counsel for the father and the children, the probate judge also made reference to the "home State" of the older child and, in voicing his understanding of the father's position, noted that at the time of the divorce action the children had been residing in Massachusetts for more than six months. See G. L. c. 209B, § 2(*a*)(1) (a "court which is competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification judgment if . . . the commonwealth . . . is the home state of the child on the commencement of the custody proceeding"). The judge indicated that due to the late filing of the father's motions, he would treat the motions as requests for rulings of law after he had completed the trial on the merits of the father's modification complaint, but that he would take testimony on a limited basis with respect to the motions as they related to the question of subject matter jurisdiction.

[18]The probate judge's memorandum of decision stated, "This court's exercise of subject matter jurisdiction has been determined on the basis of the Massachusetts Child Custody Jurisdiction Act. The [mother] filed for divorce and custody in April of 2001. At this point, [the older child] had been residing in Massachusetts, his home state, for approximately nine months at the initia-

had failed to demonstrate that a change in custody and the removal of the children to Puerto Rico would be in their best interests. The father appealed.

*Discussion.* 1. *Claimed lack of jurisdiction.* The father argues, among other things, that, because Puerto Rico was the older child's home State and had "reasserted" its "jurisdiction over the matter"[19] after emergency jurisdiction in Massachusetts was no longer necessary, the Puerto Rico habeas corpus judgment is entitled to full faith and credit and the probate judge erred in maintaining jurisdiction over the older child. The father asks that the Puerto Rico judgment "be ordered registered in [Massachusetts], thus ordering compliance with its rulings, and ordering the return of [the older child] to Puerto Rico with the father." The father's arguments are premised on the assumption that the Probate and Family Court lacked "subject matter" jurisdiction and therefore was not competent to adjudicate the custody matter in the context of the parties' divorce action.

We think the question is not whether, strictly speaking, the Probate and Family Court had "subject matter" jurisdiction —

tion of the custody proceedings. . . . [The older child] has lived in Massachusetts since July of 2000. Custody of [the younger child] clearly will be determined in Massachusetts. The family unit has a stronger connection with Massachusetts than Puerto Rico."

The memorandum also appears to suggest that Massachusetts had home State jurisdiction based on the Probate and Family Court's grant of temporary guardianship to the grandmother. In fact, insofar as the January 19, 2001, order of temporary guardianship rested on the court's emergency jurisdiction (which had been exercised at a time when Puerto Rico was the older child's home State, see discussion, *supra*), the guardianship order was not an adequate basis for establishing Massachusetts as the home State. See G. L. c. 209B, § 2(*a*)(3)(ii); *MacDougall* v. *Acres*, 427 Mass. 363, 370 (1998); *Mannor* v. *Mannor*, 46 Mass. App. Ct. 46, 53 (1998).

[19]The father also argues that the probate judge erred in assuming jurisdiction over the mother's divorce action since the requisites of domicile and residence had not been met in the case. See G. L. c. 208, §§ 4, 5. This argument appears to be grounded (in large part) in the theory that the Probate and Family Court lacked personal jurisdiction over him as he had not been a resident of Massachusetts. Putting to one side the fact that the father did not appeal from the judgment of divorce nisi, to the extent he is challenging the divorce itself, he filed an answer to the mother's complaint and admitted that the mother had resided in Massachusetts for more than twelve consecutive months (see G. L. c. 208, § 5); he also stated specifically, "I agree to the divorce." Even assuming that the issue is properly before us, there was no error.

in the sense of having been vested by the Legislature with the power to decide the custody issue, see *Doe* v. *Roe*, 377 Mass. 616, 617 (1979)[20] — but rather whether, under applicable provisions of the PKPA and MCCJA, the Probate and Family Court should have exercised jurisdiction to issue the divorce judgment awarding custody.[21] This requires a two-stage inquiry: first, whether Massachusetts was the home State when the mother's divorce action was filed, thus giving the Probate and Family Court "authority to exercise jurisdiction" under the MCCJA, *Khan* v. *Saminni*, 446 Mass. 88, 91 (2006); second, whether the court should have exercised such jurisdiction under provisions of the MCCJA and PKPA. See, e.g., *id.* at 95-96 (Trinidad court was vested with authority to adjudicate a custody issue under its laws; that Massachusetts was the home State "is not determinative of jurisdiction"). See also *Custody of Brandon*, 407 Mass. 1, 5 (1990); *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 614-615 (1987).

Under the MCCJA, "[a]ny [Massachusetts] court which is competent to decide child custody matters has jurisdiction to

---

[20] In *Doe* v. *Roe* (decided prior to enactment of the PKPA), Justice Kaplan writes:

> "The terminology of subject matter jurisdiction is awkward here, as it points to 'competency' — whether the court has been vested by the Legislature with power to decide cases of given substantive content, e.g., contract, tort, custody of children. See Restatement of Judgments § 7, Comment b (1942). . . . It is another question whether, of all the States of the Union, this Commonwealth through a court competent in custody matters can constitutionally exert judicial power over a particular lawsuit of that sort, and, if it can, whether it should."

377 Mass. at 617-618. See *B.J.P.* v. *R.W.P.*, 637 A.2d 74, 79 (D.C. 1994), quoting from *Williams* v. *Williams*, 555 N.E.2d 142, 145 (Ind. 1990) (jurisdictional limitations imposed by the Uniform Child Custody Jurisdiction Act [UCCJA] "are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority over a particular case").

[21] The PKPA, for example, does not speak in terms of voiding the orders or judgments of a State that has made a custody determination inconsistently with the PKPA, but defines when jurisdiction acquired under the laws of a State should be exercised. See 28 U.S.C. § 1738A(c)(1), (d), (g). The PKPA then sets out a framework for determining when a prior custody order must be enforced by another State or when it may be "modified" (that term being defined as a custody determination "which modifies, replaces, supersedes, or otherwise is made subsequent to" the prior custody order). See 28 U.S.C. § 1738A(b)(5).

make a custody determination" if Massachusetts was the home State of the child on the commencement of the divorce action.[22] G. L. c. 209B, § 2(*a*)(1)(i). The probate courts are competent to decide custody matters, as they have been vested by the Legislature with "exclusive original jurisdiction . . . of actions relative to the care, custody, education and maintenance of minor children." G. L. c. 215, § 4, as amended by St. 1975, c. 400, § 54. "Home state" is defined as "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with . . . a parent . . . for at least 6 consecutive months." G. L. c. 209B, § 1. See 28 U.S.C. § 1738A(b)(4), (c)(2)(A). See also *Custody of Brandon*, 407 Mass. at 7, 14 ("Section 2[*a*][1] of G. L. c. 209B grants jurisdiction based solely on residence in the Commonwealth for at least six months of the child and a parent or person acting as a parent. . . . Section 1738A[c][2] of the [PKPA] grants 'home state' jurisdiction under the same six-month requirement found in G. L. c. 209B"). Here, the mother and the older child had been living in Massachusetts for nearly nine consecutive months (and the mother had been a Massachusetts resident for over thirteen months) when she commenced the divorce action on April 13, 2001; thus, the Probate and Family Court had home State jurisdiction to make the custody determination in connection with the divorce.

Notwithstanding that the Probate and Family Court had jurisdiction to decide the custody issue, we must next consider whether the exercise of jurisdiction was appropriate. To satisfy the requirements of both the MCCJA and the PKPA, the custody proceeding must not have commenced "during the pendency of a proceeding in a court of another state" exercising jurisdiction consistently with applicable provisions of the MCCJA and PKPA. See G. L. c. 209B, § (2)(*d*); 28 U.S.C. § 1738A(g).[23]

---

[22]A " '[c]ustody proceeding' . . . includes proceedings in which a custody determination is one of several issues presented for resolution, such as an action for divorce . . . ." G. L. c. 209B, § 1.

[23]The PKPA provides that a State "shall enforce according to its terms" custody determinations "made consistently with the provisions of this section by a court of another State." 28 U.S.C. § 1738A(a). It goes on to provide that such a custody determination

"(c) . . . is consistent with the provisions of this section only if —

Prior to commencement of the divorce action on April 13, 2001, only the father's habeas corpus petition, filed February 12, 2001, was pending. To be subject to enforcement in Massachusetts, that petition, which gave rise to the Puerto Rico court's custody determination, must have been filed at a time when Puerto Rico had home State jurisdiction — that is, Puerto Rico must have been the home State of the child "within six months before the date of the commencement of the [habeas corpus] proceeding." 28 U.S.C. § 1738A(c)(2)(A)(ii). See note 23, *supra.* Because the child left Puerto Rico with the mother on July 25, 2000 — at a time when there was no outstanding order awarding custody and patria potestas to the father or prohibiting the child's removal[24] — Puerto Rico was no longer the child's home State and had not been within the six months

"(1) such court has jurisdiction under the law of such State; and

"(2) one of the following conditions is met:

"(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

". . . or

"(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

"(d) The jurisdiction of a court of a State which has made a child custody . . . determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

". . .

"(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody . . . determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody . . . determination."

[24]The father has asserted no claim under G. L. c. 209B, § 7. "Section 7 provides discretion to refuse to exercise jurisdiction if the assumption of jurisdiction would violate the purposes of the statute, reward the wrongful

preceding the February 12, 2001, filing of the habeas corpus action.

Even if Puerto Rico was no longer the child's home State, however, the judgment on the habeas corpus petition could still be subject to enforcement (and the Probate and Family Court precluded from "modifying" that judgment) if Puerto Rico had "continuing jurisdiction" under the PKPA at the time the judgment was made. That is, if Puerto Rico had made a prior child custody determination consistently with provisions of the PKPA, jurisdiction "continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant." 28 U.S.C. § 1738A(d). See note 23, *supra*; *Hillier* v. *Hillier*, 41 Mass. App. Ct. 486, 488-489 (1996) (although Massachusetts was the home State pursuant to G. L. c. 209B, § 2, the Probate and Family Court was precluded from exercising jurisdiction under the PKPA, where a Florida court had continuing jurisdiction).

The father makes no proper appellate argument that the court in Puerto Rico was entitled to invoke the continuing jurisdiction provision of the PKPA when it issued the habeas corpus judg-

---

conduct of a party, or compel the parties to litigate in an inconvenient forum." *Custody of Brandon*, 407 Mass. at 11-12. Had the father made such a claim, we would note that assertion of jurisdiction was consistent with the statute's purposes; the probate judge concluded that "[t]he family unit has a stronger connection with Massachusetts than Puerto Rico." Moreover, the mother's conduct in bringing the child to Massachusetts to avoid abuse was neither illegal nor wrongful. See, e.g., comment to Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) § 208, 9 (Part IA) U.L.A. 685-686 (Master ed. 1999) (Whether a court should decline to hear a parent's request to modify another State's order is a matter of local law. Technical illegality or wrong is insufficient to trigger the applicability of the "clean hands" section of the UCCJEA; "[d]omestic violence victims should not be charged with unjustifiable conduct for conduct that occurred in the process of fleeing domestic violence"). See also *In re Marriage of Nasica*, 12 Kan. App. 2d 794, 798 (1988) (deception regarding actual plans is not wrongful; in the absence of a court order to the contrary, both parents have equal right to custody); *Coleman* v. *Coleman*, 493 N.W.2d 133, 137 (Minn. Ct. App. 1992) (Minnesota court did not err in declining jurisdiction where the mother's removal of the children to Nebraska to avoid harm was not abduction; no prior order had awarded custody to the father). Contrast *Curtis* v. *Curtis*, 574 So. 2d 24, 30 (Miss. 1990) (where the father removed the children to Mississippi in violation of a valid Utah custody decree and obtained a protective order, "such court ordered involuntary residence [i.e., the Mississippi order] d[id] not generate so much as a single tick of the UCCJA's six consecutive months clock").

ment on April 18, 2001.[25] See *Cameron* v. *Carelli*, 39 Mass.

[25]We have also considered the conclusions of the Bayamón Superior Court judge, as set forth in the habeas corpus judgment. The Bayamón judge notes that after the October order expired the child remained in the father's physical custody; she finds that the mother, by removing the child to Massachusetts, deprived the father of patria potestas, but she does not conclude that a valid order awarding custody to the father was in place. The judgment goes on to state that the July 26, 2000, abuse prevention order was issued by the Probate and Family Court without jurisdiction over the father's person and thus "lacks legal validity." Finally, the judgment concludes that the grandmother "is unlawfully exercising custody of the minor, which had been awarded to her by the 'Probate and Family Court' by virtue of the mentioned [abuse prevention] order."

It does not appear from this judgment that the Bayamón court judge was exercising continuing jurisdiction, see 28 U.S.C. § 1738A(g); rather, it appears that the judge determined (erroneously) that, pursuant to the PKPA, Puerto Rico had original home State jurisdiction and Massachusetts did not have home State jurisdiction. Our view is supported by the fact that the father's habeas corpus petition is based solely on his claim that "under secs. 1738A(b)(4) and 1738A(c)(2)(A)," Puerto Rico is the child's home State.

Although Puerto Rico has not adopted the UCCJA, the PKPA is applicable to custody determinations made by the Puerto Rico courts, which are obligated to "give full faith and credit to the rulings of the different courts of the United States in custody proceedings where the PKPA requirements and standards are met." *Perron* v. *Corretjer*, 13 P.R. Offic. Trans. 775, 782 (1982).

In *Perron*, the parties were married in New York and lived throughout their marriage in New Jersey; both of their children were born there. During a two-week visit with the children to the home of her parents in Puerto Rico, the mother decided to separate from the husband and on September 3, 1982, filed, in Puerto Rico, a petition for custody; an order issued September 17, 1982, awarding her temporary custody. On September 10, the father filed a divorce action in New Jersey, in which he also sought custody; on September 21, the New Jersey court exercised jurisdiction, awarded the father temporary custody, and ordered the mother to return the children to New Jersey. *Id.* at 770-773. Although holding that "the children's 'home State' is and has been New Jersey," *id.* at 782, the Supreme Court of Puerto Rico went on to observe, at 784-785, that 28 U.S.C. § 1738A(e) requires reasonable notice and an opportunity to be heard before a custody determination is made, and that the mother had received only five days' notice prior to the temporary custody hearing. The court concluded that the New Jersey decree "does not meet at this stage the due process requirement of the PKPA, and, consequently, should not be given full faith and credit by our courts under this statute." *Id.* at 786-787. (As to the consideration of due process, we observe that the mother here was served with notice of the habeas corpus proceeding on March 28, 2001, only nine days prior to the hearing on the petition, held on April 6, 2001.)

On the basis of the facts of record in the instant case, the home State requirements of the PKPA not having been met, the Puerto Rico habeas corpus judgment should not be given full faith and credit. Contrast *Delk* v.

App. Ct. 81, 85 (1995). Although he alluded to the issue in his motion to dismiss, he abandoned the issue on appeal. In light of the father's abandonment of any argument concerning continuing jurisdiction, and the views of the Bayamón Superior Court judge as to the basis for that court's jurisdiction, see note 25, *supra*, we consider the issue no further.

When the mother filed the divorce action on April 13, 2001, the older child had been living with her in Massachusetts for nearly nine months, and the child was not the subject of a previously issued valid judgment or order of the Puerto Rico courts awarding custody to the father. When the father filed his habeas corpus petition on February 12, 2001, the older child had not resided in Puerto Rico for the six months preceding the filing. Whether couched in terms of subject matter jurisdiction or home State jurisdiction as defined by the PKPA and MCCJA, we conclude that Massachusetts had jurisdiction over the custody issue and that it was properly exercised.[26]

2. *Modification.* Contrary to the father's contention, the

---

*Gonzalez,* 421 Mass. 525, 530 n.3, 535 (1995) (continuing jurisdiction of a foreign court upheld where it had jurisdiction under its own laws and the court had home State jurisdiction when its original order issued).

[26]We have made our determination of the issue of jurisdiction in the exercise of our discretion and not because we agree with the father that he had the right to collaterally attack the divorce judgment awarding custody to the mother. See note 20, *supra*; *B.J.P.* v. *R.W.P.*, 637 A.2d 74, 79 (D.C. 1994) ("jurisdictional limitations imposed by the UCCJA are not equivalent to declarations of subject matter jurisdiction" and are waivable).

We note, moreover, that in the divorce proceedings, the father contested what he described as the Probate and Family Court's subject matter jurisdiction over the custody issue, and the probate judge appears (on this somewhat inadequate record) to have addressed it; the father did not appeal from the adverse decision and initially acknowledged the validity of the custody order through his filing of the complaint for modification. On this basis, even if viewed as a question of traditional "subject matter jurisdiction," it is arguable that the father was precluded from relitigating his jurisdictional contention in the context of the modification and guardianship actions. See *Conservation Commn. of Falmouth* v. *Pacheco,* 49 Mass. App. Ct. 737, 741 (2000) (party who failed to avail himself of an opportunity to seek de novo review of a commission's findings and its assertion of authority was "precluded from relitigating his jurisdictional contention"). Compare Restatement (Second) of Judgments § 12(2) comment c, at 119 (1982) ("rule of issue preclusion is itself subject to qualifications[,] . . . [including where] the exercise of jurisdiction infringes a substantial public interest," thus warranting relitigation); *Harker* v. *Holyoke,* 390 Mass. 555, 558-559 (1983) (although "public interest

probate judge did not abuse his discretion by declining to modify the divorce judgment to award the father sole legal and physical custody of the children or to allow the father to remove the children to Puerto Rico. See G. L. c. 208, § 28, as amended by St. 1993, c. 460, § 60 ("Upon a complaint after a divorce . . . the court may make a judgment modifying its earlier judgment as to the care and custody of the minor children of the parties provided that the court finds that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children"); G. L. c. 208, § 30 (the Massachusetts "removal statute"). See also *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257, 266 (2001) (best interests of the child always remain the paramount concern in a removal case). Although the evidence reflects that the mother had experienced significant parenting problems in the past and the children were removed from her custody for periods of time arising in part because they had allegedly been abused by her former boyfriend (against whom there is an abuse prevention order on behalf of the children), the judge found that the children now live with the mother in her own apartment, that the mother (who works) receives assistance from her mother in caring for the children, that the mother's home is clean and organized, and that the children are "well-dressed and clean and doing well in school and day care respectively." In addition, the judge found that the mother is no longer in an abusive relationship with her former boyfriend, she "has engaged in counseling to explore preventing future relationships involving domestic violence," and has been "successful at not re-engaging in relationships involving domestic violence."

The judge also made findings concerning the physical and emotional abuse inflicted by the father on the mother and the older child during the marriage. See note 2, *supra.* The judge concluded that the father had failed to show that "the quality of the children's lives would at all be improved by a move to Puer-

in enforcing limitations on courts' subject matter jurisdiction is ordinarily served adequately by permitting direct attack on judgments[,] . . . there may be rare circumstances in which sound policy requires that finality give way to the enforcement of limitations on a court's authority by collateral attack"). We need not decide which principle has greater applicability here.

to Rico, emotionally, physically, or developmentally," or that the removal of the children to Puerto Rico was in the best interests of the children. To the contrary, the judge found that "[i]n light of the parties' violent history, removal of the children from the Commonwealth is not in either child's best interest." There was no error.

*Modification judgment dated*
*October 23, 2003, affirmed.*