NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-1029                                          Appeals Court

GUARDIANSHIP OF A MINOR.


No. 19-P-1029.

Bristol.     April 9, 2020. - July 28, 2020.

Present:  Milkey, Shin, & Englander, JJ.


Jurisdiction, Custody of child, Probate Court.  Probate Court,
     Guardian, Jurisdiction.  Massachusetts Child Custody
     Jurisdiction Act.  Parental Kidnapping Prevention Act.
     Minor, Custody.  Parent and Child, Custody of minor.
     Practice, Civil, Guardianship proceeding.



Petition for appointment of guardian filed in the Bristol
Division of the Probate and Family Court Department on May 9,
2017.

A petition for removal of guardians was filed on April 26,
2018; a motion to dismiss was heard by Peter Smola, J., and a
motion to alter or amend the judgment was considered by him.


The case was submitted on briefs.
John H. Walsh for the mother.
Julie A. Lowre for the child.
S.M., pro se.


SHIN, J.  At issue is whether the Probate and Family Court

(probate court or Massachusetts probate court) retained home

State jurisdiction over a custody dispute between the mother of the minor child and the child's permanent guardians, L.M. and S.M., who now reside with the child in Michigan.  For the first six years of her life, the child lived with the mother in Massachusetts.  L.M. and S.M. removed the child to Michigan in November 2017, one day after they were appointed permanent guardians following a hearing in the probate court.  Less than six months later, the mother filed a petition in the probate court to terminate the guardianship, claiming among other things that she did not receive notice of the hearing.  On L.M.'s motion, a probate court judge dismissed the mother's petition, concluding that jurisdiction lies in Michigan, not Massachusetts.  The basis for the judge's ruling was that, in the interim between the child's removal from Massachusetts and the mother's filing of the petition in the probate court, the Michigan Probate Court for Jackson County (Michigan court) had issued its own order granting L.M. and S.M. permanent guardianship of the child.  Believing that that order was "controlling," the judge ruled that the mother had to seek relief in Michigan.  Complicating matters, while the mother's appeal from the decree of dismissal was pending in this court, S.M. initiated a custody action in the Michigan court and obtained a judgment granting her permanent custody of the child.

We conclude that the probate court judge erred in determining that the Massachusetts courts lack jurisdiction over the mother's petition to terminate the guardianship.  Under the Massachusetts Child Custody Jurisdiction Act (MCCJA), G. L. c. 209B, the probate court has jurisdiction because Massachusetts had been the child's home State within six months before the filing of the petition, the child is absent from Massachusetts because of her removal by the guardians, and the mother continues to reside in Massachusetts.  Furthermore, under the Federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, the jurisdiction of the Massachusetts courts is exclusive and continuing.  This means that the Michigan court was precluded by Federal law from issuing a superseding guardianship order and from exercising jurisdiction over S.M.'s custody complaint while the mother was pursuing her appeal of the decree of dismissal in this court.  Accordingly, we reverse.[1]

Background.  Partly because of the procedural posture of the case, the factual record before us is sparse.  We set forth the facts that appear to be uncontested based on the parties'

---

[1] Although the child filed a brief as appellee, she supports the mother's position on the jurisdictional question.  The child also raises an argument not raised by the mother, which is that the child had a due process right to court-appointed counsel in the probate court proceeding.  Because the child did not appeal from the decree of dismissal, we do not address this argument.

filings in the probate court and in this court.[2]  For context we also include some of the mother's factual allegations, noting them as such where they appear.

The child was born in August 2011 in Taunton and lived with the mother for the first several years of her life.  The child does not have a relationship with her father, and his whereabouts are unknown.

Sometime after the child was born, the mother developed a substance use disorder, which led L.M., the maternal great-grandmother, to petition the probate court in May 2017 for guardianship of the child.  On August 8, 2017, the mother consented to a temporary guardianship, valid for ninety days.  She apparently did so with the understanding that L.M. would move to Michigan with the child and with S.M. (L.M.'s daughter, the maternal great-aunt), and the mother could join them once she was drug-free.  The probate court docket reflects that the mother, who is indigent, did not have counsel when she signed the consent form.  See Guardianship of V.V., 470 Mass. 590, 594

---

[2] L.M. and S.M. did not file a brief on appeal.  Instead, S.M. filed a motion to dismiss on November 7, 2019 -- which a single justice of this court denied without prejudice to renewal in S.M.'s brief -- and a letter dated March 5, 2020, that we construe as a second motion to dismiss.  On April 1, 2020, we issued an order for supplemental briefing, specifically directing L.M. and S.M. to attach to their supplemental brief "copies of all orders, judgments or decrees entered by the Michigan courts, as well as copies of all docket sheets."  They failed to respond.

(2015) (indigent parent whose child is subject of guardianship petition "has a right to have counsel appointed and to be so informed").

According to the mother, about one month after signing the consent form, she was involuntarily committed for substance use treatment at facilities in Taunton and Fall River. She alleges that she reached out to her family around this time to ask about the next hearing date, but "was told not to worry about it." Unbeknownst to her, a hearing was scheduled for November 6, 2017, and later continued to November 20, 2017. The mother alleges that she was not served with notice.

After the November 20, 2017, hearing, at which neither the mother nor counsel on her behalf appeared, the judge appointed L.M. and S.M. as permanent coguardians and authorized them "to remove the minor child from the Commonwealth of Massachusetts and relocate to Jackson, Michigan."[3] The judge's order stated that the mother "after hearing, is found to be currently unfit," as she "is unable to properly care for the child and did not object to [the guardianship] petition." L.M. and S.M. moved to Michigan with the child the next day.

---

[3] The paternal grandmother, who was represented by counsel at the hearing, entered into a stipulation with L.M. and S.M., allowing her visitation with the child.

Just over five months later on April 26, 2018, the mother, now with appointed counsel, filed a petition in the probate court to revoke her consent and to remove the guardians. L.M., also represented by counsel, moved to dismiss the petition for lack of subject matter jurisdiction, on the basis that the Michigan court had issued letters of guardianship on January 8, 2018, granting L.M. and S.M. full, permanent coguardianship of the child. As reflected in the report of the home study conducted by the Michigan Department of Human Services, the Michigan letters of guardianship purportedly were intended to effectuate the Massachusetts probate court judge's November 20, 2017, order. Specifically, the home study report states that, "[t]he [Massachusetts] court informed [L.M. and S.M.] that Michigan is one of the very few states that a new guardianship request must be made as they don't have an agreement to honor guardianships out of state." The report also states that L.M. and S.M. informed the Michigan department worker that "they have the biological mother's approval, which was verified through Massachusetts court paperwork."

The probate court judge held a nonevidentiary hearing on L.M.'s motion to dismiss the mother's petition in July 2018. In opposing the motion, the mother's counsel argued that the mother had not received notice of the November 20, 2017, hearing, noting that she had been involuntarily committed under G. L.

c. 123, § 35, in the weeks prior to that hearing. Counsel also argued that the Michigan court lacked "authority to issue the guardianship . . . because [the child] had not been a resident of Michigan for six months." Counsel represented that the Michigan court "did not contact the mother at all" -- relying instead on "her having been notified of the hearings [in Massachusetts]" -- and that the mother did not have the financial means to travel to Michigan to fight for custody. On the merits of the mother's petition for removal of the guardians, counsel argued that it was in the child's best interest to terminate the guardianship because she had been acting out and L.M. and S.M. wanted to treat her with psychoactive drugs over the mother's objection.

Ruling from the bench, the judge allowed the motion to dismiss on the following rationale:

> "[T]he State of Michigan entered[,] subsequent to this Court entering its guardianship order, . . . [its] own order for permanent guardianship. What their rules are, what their requirements are for service, whatever it might be, they did it; and I think the remedy or the relief has got to go to Michigan. Mother has to go there and ask for relief.

> "I strongly would believe that Michigan's order is the controlling order right now, and so I'm going to allow the motion to dismiss."

The mother's motion to alter or amend the judgment was denied. She appealed from both the decree dismissing her petition to

remove the guardians and the order denying the motion to alter or amend the judgment.

In June 2019, while the mother's appeal was pending in this court, S.M., with L.M.'s consent, filed a "complaint for custody" in the Michigan court, seeking sole legal and physical custody of the child and an order that the mother pay child support.  This prompted the mother's Massachusetts counsel to send a letter to the Michigan court seeking appointment of counsel for the mother in the Michigan case.  By return letter, a judge of the Michigan court explained that "Jackson County does not provide court appointed counsel on custody matters as they are civil."  According to the mother, she then filed four pro se motions in the Michigan case -- a motion to dismiss for lack of personal jurisdiction, a motion to dismiss for lack of subject matter jurisdiction, a motion to stay the proceeding pending the outcome of the Massachusetts case, and a motion for appointment of counsel -- but none was acted on.  In the mother's supplemental brief filed at the request of this court, counsel represents that he spoke to the Michigan court's clerk's office about the mother's motions and was told that they would not be heard without a Michigan attorney.  Counsel then tried to secure legal assistance for the mother from Legal Services of South Central Michigan but was unsuccessful.

On August 29, 2019, the Michigan court judge issued a temporary order granting S.M. sole legal custody and primary physical custody of the child, specifically noting in the order that the mother had failed to appear at a conciliation conference. Final judgment entered in the Michigan case on January 30, 2020. In the March 5, 2020, letter that S.M. filed with this court, she represents that the judgment granted her permanent custody of the child.

Discussion. A Massachusetts court's jurisdiction over child custody proceedings is governed by the MCCJA, G. L. c. 209B. See Custody of Brandon, 407 Mass. 1, 5 (1990); Guardianship of Minor Children, 97 Mass. App. Ct. 316, 319 (2020). Under the MCCJA a court must first determine whether it has the power to exercise jurisdiction over the custody proceeding; if it has that power, the court may still decline jurisdiction based on one of the grounds specified in G. L. c. 209B, § 7 (a). See Custody of Brandon, supra; Guardianship of Minor Children, supra at 323. In this case it is evident from the judge's remarks at the motion to dismiss hearing that he did not decline jurisdiction for discretionary reasons but, rather, concluded that the issuance of the letters of guardianship by the Michigan court divested the Massachusetts courts of jurisdiction. The mother and the child contend that this was legal error. We agree.

Under G. L. c. 209B, § 2 (a), there are four bases upon which a Massachusetts court can exercise jurisdiction over a custody proceeding.  See Guardianship of Minor Children, 97 Mass. App. Ct. at 320.[4]  The first is home State jurisdiction, which exists where Massachusetts "(i) is the home state of the child on the commencement of the custody proceeding" or, as pertinent here, where Massachusetts "(ii) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from the commonwealth because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to reside in the commonwealth." G. L. c. 209B, § 2 (a) (1).  "Home state" is defined as "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with his parents, a parent, or a person acting as parent, for at least [six] consecutive months."  G. L. c. 209B, § 1.

As the Supreme Judicial Court has explained, "[c]onsistent with the underlying purpose of [the MCCJA] to allow for uniform treatment of custody issues by an appropriate court, the statute creates an exception to the residency requirement if

---

[4] A "petition to terminate [a] guardianship is a custody proceeding."  Guardianship of Minor Children, 97 Mass. App. Ct. at 321.

Massachusetts would be the child's home State except that the child is absent from the State 'because of his or her removal or retention' by a person claiming custody and a parent . . . continues to reside in the Commonwealth." Custody of Victoria, 473 Mass. 64, 70 n.11 (2015), quoting G. L. c. 209B, § 2 (a) (1).  Such is the case here.  When the mother filed her petition to terminate the guardianship -- the operative date for jurisdictional purposes, see Guardianship of Minor Children, 97 Mass. App. Ct. at 321-322 -- about five months had passed since L.M. and S.M. removed the child to Michigan.  Before the removal the child had lived continuously, i.e., for at least six consecutive months, in Massachusetts.  Thus, Massachusetts "had been the child's home state within six months before the" mother filed the petition, and this, combined with the fact that the mother "continues to reside in the commonwealth," gave the probate court jurisdiction over the petition.  G. L. c. 209B, § 2 (a) (1) (ii).

Contrary to the probate court judge's rationale, the Michigan letters of guardianship did not divest the probate court of jurisdiction.  Their apparent purpose, as the record reflects, was to give effect to the judge's own November 20, 2017, order granting L.M. and S.M. permanent guardianship.  See Nadimpali v. Byrraju, 326 Mich. App. 73, 88-91 (2018) (describing Michigan's procedure for registering child custody

determinations from another State); Jamil v. Jahan, 280 Mich. App. 92, 102 (2008) ("registration to enforce a child-custody determination from another state is distinct from actually making a child-custody determination").  The letters of guardianship could not supersede the probate court judge's order, as he appears to have found.  Were that the Michigan court judge's intent, the letters of guardianship would violate the Federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, which "imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the [PKPA]."  Thompson v. Thompson, 484 U.S. 174, 175-176 (1988).  Under the PKPA the jurisdiction of the State court that made the initial custody determination (here, the Massachusetts probate court) is exclusive and continuing so long as that State "remains the residence of the child or of any contestant" and the court still has jurisdiction under its own laws.  28 U.S.C. § 1738A(d).  Therefore, a court of one State may not modify a custody determination made by a court of another State unless "it has jurisdiction to make such a . . . determination" and "the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination."  28 U.S.C. § 1738A(f).  Accord Mich. Comp. Laws § 722.1203.  "[M]odify" in this context "refer[s] to a custody

or visitation determination which modifies, <u>replaces,</u> <u>supersedes, or otherwise is made subsequent to</u>, a prior custody or visitation determination concerning the same child" (emphasis added). 28 U.S.C. § 1738A(b).

When the Michigan court issued the letters of guardianship in January 2018, the Massachusetts probate court still had home State jurisdiction (as the child had then been living in Michigan for less than two months), and the mother remained a resident of Massachusetts. As a result, under the PKPA, the Michigan court had no power to modify the Massachusetts probate court judge's November 20, 2017, order. This conclusion is in accord with Michigan case law. As the Supreme Court of Michigan has stated, "the jurisdiction of the initial court continues to the exclusion of all others as long as that court has jurisdiction under the law of that state and the state remains the residence of the child or any contestant" (citation omitted). <u>In re Clausen</u>, 442 Mich. 648, 671 (1993). Where these requirements are met, as they are here, Michigan courts have consistently dismissed attempts to modify child custody determinations issued by a sister State. See, e.g., <u>id</u>. at 671-673; <u>Nash</u> v. <u>Salter</u>, 280 Mich. App. 104, 111 (2008); <u>Atchison</u> v. <u>Atchison</u>, 256 Mich. App. 531, 538 (2003). The probate court judge thus erred in his belief that the Michigan letters of

guardianship replaced or superseded his order and thereby divested the probate court of jurisdiction.

This would end the jurisdictional inquiry were it not for S.M.'s later act of filing a complaint for custody in the Michigan court. At that point Michigan would have been the child's home State assuming the child had lived there for the prior six consecutive months. See 28 U.S.C. § 1738A(b); Mich. Comp. Laws §§ 722.1102, 722.1201. But even so, the PKPA still confers exclusive and continuing jurisdiction on the Massachusetts courts because this appeal was pending when S.M. filed the custody complaint in the Michigan court. The PKPA provides that "[a] court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination." 28 U.S.C. § 1738A(g). Accord Mich. Comp. Laws § 722.1206. This means that "[o]nce a State exercises jurisdiction consistently with the provisions of the [PKPA], no other State may exercise concurrent jurisdiction over the custody dispute, . . . even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree" (emphasis added;

footnote omitted).  Thompson, 484 U.S. at 177.[5]  The bar on concurrent jurisdiction furthers "one of the chief purposes of the PKPA" -- "to 'avoid jurisdictional competition and conflict between State courts.'"  Id., quoting Pub. L. 96-611, 94 Stat. 3569, § 7(c)(5).

As we have explained above, the probate court had jurisdiction, consistent with the PKPA, to adjudicate the mother's petition to terminate the guardianship, which was filed when Massachusetts was still the child's home State.  We thus conclude that the PKPA prevented the Michigan court from exercising concurrent jurisdiction over the custody dispute during the pendency of this appeal.[6]  The PKPA also prevented the

---

[5] See Miller-Jenkins v. Miller-Jenkins, 180 Vt. 441, 449 (2006) ("Because the Vermont dissolution proceeding was still pending . . . and the Vermont proceeding was consistent with the PKPA, the Virginia court lacked jurisdiction pursuant to § 1738A(g) of the PKPA").

[6] The Michigan Uniform Child Custody Jurisdiction and Enforcement Act requires "a party's pleadings [to] state whether the party knows of another pending custody proceeding."  Fisher v. Belcher, 269 Mich. App. 247, 255 (2005), citing Mich. Comp. Laws § 722.1209(1)(b).  It also imposes "a continuing duty [on parties] to inform the court of a proceeding in this or another state that could affect the current child-custody proceeding."  Mich. Comp. Laws § 722.1209(4).  S.M.'s complaint for custody filed in the Michigan court did not mention that the mother had filed a petition to terminate the guardianship in the Massachusetts probate court, nor did it mention that this appeal was pending.  Instead, the complaint referenced only the letters of guardianship issued by the Michigan court in January 2018 and then stated that, "[e]xcept for the referenced guardianship matter, no other Michigan court has continuing jurisdiction over the minor child."

Michigan court from entering the ensuing custody judgment because the requirements of 28 U.S.C. § 1738A(f)(2) -- allowing modifications of custody determinations only where "the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction" for discretionary reasons -- were not met.  As a result, the Michigan court's judgment is not entitled to full faith and credit.  Cf. E.N. v. E.S., 67 Mass. App. Ct. 182, 194 (2006) (because Puerto Rico court did not have home State jurisdiction, its judgment awarding custody to father not afforded full faith and credit).  Rather, under the PKPA, it is the "first State's ensuing custody decree" that is entitled to full faith and credit, Thompson, 484 U.S. at 177, and here, that first State is Massachusetts.

We recognize that our decision, by virtue of the fact that the Michigan court has already entered a judgment in the custody action, raises the potential for conflicting custody orders. That difficult issue has not yet ripened into an actual controversy, however, and we cannot resolve it in this appeal. We do note that both the MCCJA and the Michigan Uniform Child Custody Jurisdiction and Enforcement Act encourage communication and exchange of information with the courts of other States. See G. L. c. 209B, § 7 (c); Mich. Comp. Laws § 722.1206(2).  See also Redding v. Redding, 398 Mass. 102, 105 (1986) (MCCJA "encourage[s] communication, cooperation, and mutual assistance

between courts and seek[s] to avoid jurisdictional competition and conflict"); Fisher v. Belcher, 269 Mich. App. 247, 255 (2005) (Michigan Uniform Child Custody Jurisdiction and Enforcement Act "allows courts of this state to confer with courts of another state to determine proper jurisdiction"). To the extent the mother seeks to have the Michigan judgment declared void, we lack the power to grant that relief. It must be sought in the Michigan courts, as there is no private right of action to enforce the PKPA in the Federal courts. See Thompson, 484 U.S. at 187.

We address a final point, which concerns L.M.'s alternative argument in her motion to dismiss the mother's petition that Massachusetts is not a convenient forum and so, if jurisdiction exists, the probate court judge should decline to exercise it under G. L. c. 209B, § 7. While we do not read the judge's remarks to have endorsed this argument, we offer a few observations should the issue recur on remand.

Under G. L. c. 209B, § 7 (a) (iii), a court may decline to exercise jurisdiction if it finds that Massachusetts "would constitute an inconvenient forum and that a court of another state would constitute a more convenient forum." Given our conclusion that the mother is entitled to be heard on the merits of her petition to terminate the guardianship, it follows that Michigan could not be the more convenient forum absent action by

the Michigan court vacating the judgment granting permanent custody of the child to S.M., and providing the mother an opportunity to be heard on why custody should be transferred to her.  In the event the Michigan court takes such action, the probate court judge should consider the burden on the mother to litigate the custody dispute in Michigan, given especially her lack of resources and apparent inability to obtain counsel in Michigan.  The judge should also consider any renewed assertion by L.M. that it would be burdensome on her and S.M., and contrary to the child's best interest, to litigate in Massachusetts.  Finally, we think the judge could appropriately consider that Massachusetts was the child's home State when the mother filed her petition and it would have been fully in line with the purpose of the MCCJA for the probate court to have exercised jurisdiction from the outset.  See G. L. c. 209B, § 7 (d) (5) (court may consider "whether the exercise of jurisdiction . . . would contravene any of the purposes of this chapter"); Custody of Brandon, 407 Mass. at 13 ("Massachusetts court's decision to exercise jurisdiction was in keeping with the purposes of the statute").

Conclusion.  The decree of dismissal is reversed, and the case is remanded for further proceedings consistent with this opinion.[7,8]

So ordered.

---

[7] To the extent the mother seeks to vacate the November 20, 2017, order as void for lack of service, that part of the petition shall be treated nunc pro tunc as a motion for relief under Mass. R. Civ. P. 60 (b) (4), 365 Mass. 828 (1974).  See Guardianship of Minor Children, 97 Mass. App. Ct. at 323-324.

[8] S.M.'s March 5, 2020, request to dismiss the appeal is denied.